ALONZO J. WHITEMAN *vs.* C. A. SEVERANCE and another.

July 7, 1891.

State Mineral Lands—Leases.—Certain provisions of an act of the legislature of the state, entitled "An act to regulate the sale and lease of mineral and other lands belonging to the state of Minnesota," (Laws 1889, c. 22,) construed.

Same—Duty of State Land Commissioner.—By section 2 of said law, the state land commissioner was empowered, and it was his duty, to prescribe and announce such reasonable rules and regulations as would promote the objects of the act, encourage honest competition, and insure the utmost fairness among those who desired to avail themselves of its terms.

Same—Several Applications on file when Commissioner Issues Lease —Right of Unsuccessful Applicant.—Where more than one application for a lease of land was on file in the commissioner's office when he acted upon an application, it was his duty, under the law, to award the lease to the applicant who would pay the most for it. But the fact that the officer proceeded irregularly, by issuing the lease without any competition between the applicants, and thereafter entered into the contract provided for in section 4, with the holder of the lease, is not sufficient ground for the maintenance of an action to have the holder of the lease and the contract adjudged to hold the same in trust for another of the applicants, and that the latter be decreed the owner of each.

Same—Successful Applicant not Chargeable as Trustee.—The plaintiff's right to recover in such a case depends upon the fact that, if the law had been properly administered, the leases would have been issued and the contracts entered into with him.

Appeal by plaintiff from a judgment of the district court for St. Louis county, entered on the pleadings, pursuant to an order by *Stearns, J.*

*Wm. W. Billson* and *Flandrau, Squires & Cutcheon,* for appellant.

*Draper & Davis, C. K. Davis,* and *Frank B. Kellogg,* for respondents.

COLLINS, J. The determination of this action requires of the court a construction of some parts of an act of the legislature approved April 24, 1889, entitled "An act to regulate the sale and lease of mineral and other lands belonging to the state of Minnesota," now chapter 22, Laws 1889. Judgment on the pleadings in defendants' favor was ordered by the court below, the appeal being from the judgment. From these pleadings it appears that on the afternoon of the day last mentioned, immediately after the approval of the act by the governor, the defendant Severance filed with the commissioner of the state land-office his application for a lease upon and for the premises described in the complaint, mineral lands then belonging to the state, and on the next day paid to the state treasurer the sum of money prescribed in section 2 of said act. On the 25th day of April the plaintiff filed his application for a lease of the same tract of land with the commissioner, and later, on the same day, one Geggie filed his application for a lease of the same premises, with the land-commissioner. Subsequently, and prior to the 1st day of March, 1890, applications for leases of the land were filed with the commissioner by two other persons. No further applications were made, so far as has been shown. Each of the persons filing applications subsequently to that filed by defendant Severance were refused leases by the commissioner, and, according to the allegations of the complaint, duly assigned and transferred to plaintiff all rights and interests acquired by them by reason of their applications, long before the commencement of this action. On the day last mentioned the commissioner, acting undoubtedly upon the belief that the person who made the first application after the approval of the legislative enactment was entitled thereto, issued two leases upon and for said tract of land to defendant Severance, each being for a part of the tract; and on the same day contracts were made and entered into by and between the commissioner and said Severance, as provided for in sections 3 and 4 of the act, covering the land described in the leases. Thereupon Severance assigned and conveyed to the defendant corporation the leases and contracts

held by him, the latter having full notice and knowledge of all of the facts before mentioned. It further appears that the corporation has entered upon the land, and has actively engaged in excavating ore therefrom, as was contemplated in the leases. The relief demanded by plaintiff was that the last-named defendant be adjudged to hold the leases and contracts in trust for him, and that he be declared and decreed the owner of each.

The plaintiff contends that the application made by Severance on April 24th was premature, and therefore inoperative. It was filed, unquestionably, before the act of the legislature took effect. This was April 25th, the day following that on which the governor's signature of approval was affixed to it. *Duncan* v. *Cobb,* 32 Minn. 460, (21 N. W. Rep. 714;) *Parkinson* v. *Brandenburg,* 35 Minn. 294, (28 N. W. Rep. 919.) It is further contended by plaintiff that his application, as the first in order after the law took effect, had precedence and secured to him a vested right to the lease applied for,—a right which the commissioner had no power to ignore. The defendant's position is that, by the terms of section 1 of the act, discretionary authority has been conferred upon the commissioner, not only as to whether he will execute leases, but in respect to persons to whom the leases may be issued; that the application for a lease provided for in the law is but a mere proposal, which may be accepted or rejected at will; and hence that it was wholly within the power of the commissioner to decline the application or proposal made by plaintiff, and at the same time accept that irregularly made by defendant Severance. It is also argued that, if it be held that the person who first makes application is entitled to the lease, the proper tribunal has determined the question as one of fact, that its conclusion is not reviewable by a court of equity, and that the commissioner's decision is final and conclusive everywhere.

The various provisions of the statute, aside from the section which has been devoted to a form for the mining lease, are not so clear and explicit as they should have been, but are capable, we think, of a construction which will promote the objects of the act, without doing injustice to those who desire to obtain leases and contracts, or jeopardizing the interests of the state. The first section confers upon the

land-commissioner authority to execute leases and contracts for the mining and shipping of iron ore from state lands, but subject to conditions appearing in subsequent sections of the law. The lease is really nothing more than a permit to explore for mineral. By the second section it is provided that the applications for leases shall be made in such form as the commissioner shall prescribe, but before a lease is granted the applicant must pay to the state treasurer the sum of $25. There is a further provision, in substance, that when two or more persons shall apply at the same time for leases of the same tracts of land, the one who will pay the most for a lease is entitled to it. To the holder of the lease there is given permission and the exclusive right to prospect for ore upon the land for the period of one year, and he may also, within the year, obtain from the state the exclusive right to mine for the period of 50 years, the form of the mining contract being set out at length in section 4. There are no other provisions which are of service in considering the questions now before us, except that by the terms of section 5 all payments of money must be made to the state treasurer on the order of the auditor, the commissioner *ex officio*.

The object and purpose of the law seem unmistakable. The design was to throw open to the public, for exploration and for mining operations, such of the state lands as contained iron ore. This being the purpose, it would seem very improbable that the legislature intended to vest in the commissioner a discretion to act or not, as he chose, to grant him the power and authority to lease or to refuse to lease, and, should he determine to lease, the right to select at will the persons upon whom his favors should be bestowed. No such powers were intended to be placed in the hands of the officer named, but the design was to render all mineral lands leasable, under reasonable rules and regulations, whereby and through which applicants could, in a proper and orderly manner, obtain an exclusive license to prospect upon certain territory for a period of one year, and then, within that time, the privilege of entering into the 50-year contract before mentioned. It might easily be said that this of itself contemplated that the commissioner should adopt and promulgate such rules and regulations as would insure fairness towards the public, and at

the same time protect the interests of the state. But it is provided in the second section that the form of the application shall be prescribed by the commissioner. This language is not to be narrowly construed, as simply meaning that he shall regulate nothing but the wording of the application, his duties in this respect ending with the preparation of a blank form to be used by those who apply for leases. Under this section the commissioner was empowered to lay down and establish, not only the form to be used when making an application for a lease, but any reasonable rules in connection with the transaction which would tend to prevent improper practices and unjust discrimination in the awarding of mining privileges. Rules for the guidance of those who sought leases were of the greatest importance, if their interests, or the interests of the state, were to be considered and protected. Fair competition was expected and in part provided for. Should two or more persons apply for leases at the same time, the lease was to be issued to the applicant who would pay the greatest sum of money for it. It is obvious that by this provision the lawmakers could not have been anticipating a case which would be a most remarkable one,—a case where two or more applicants had filed at precisely the same moment of time. Evidently it was thought that there might be on file in the commissioner's office at the time he was required to act in the matter, and under his established rules, more than one application for the same tract of land. If such should be the case, the lease was to be issued, very properly, to the highest bidder. Uniformity and regularity in the methods by which leases can be secured are of the utmost importance, and we are clearly of the opinion that, under the statute, it was the duty of the commissioner to prescribe and announce such reasonable rules and regulations as would promote the objects of the law, encourage honest competition, and insure the utmost fairness among those who desired to avail themselves of its provisions.

The applications made by the several persons named in the pleadings in this action would have led, had rules and regulations of this nature been in existence, to a formal and honorable competition, and of this no one should complain. Even in the absence of all rules and regulations, the leases should have been awarded to the party

who would have paid the most, because there was on file, at the same time and when the commissioner acted, more than one application for the same land. The commissioner should have called for bids from all applicants, and the lease granted to the one who would pay the most for it. But the fact that this course was not pursued will not warrant a recovery by the plaintiff, for his right to the relief demanded must, in any event, depend upon the fact that, had the law been properly administered, the leases would have been awarded and the contracts would have been entered into with him. It is not enough for him to demonstrate that neither should have been granted to his opponent. To succeed, the plaintiff should have possessed such equities as would control the legal title to the leases and contracts while they were in the defendant's hands. From what has been heretofore said, it is manifest that mere priority of filing an application, assuming that the plaintiff filed first, gave him no vested rights so as to enable him to maintain this action.

Judgment affirmed.

NOTE. A motion for a reargument of this case was denied July 17, 1891.