(Opinion published 55 N. W. Rep. 744.)

---

JAMES H. BAKER *et al. vs.* ROBERT JAMISON.

Argued May 26, 1893.   Affirmed June 28, 1893.

**When Title Accrues to Selected Indemnity School Lands.**

The state, by merely selecting lands of the United States to supply deficiencies of school lands arising from pre-emption, does not acquire a title to such lands,—not at least, until such selection is approved by the Secretary of the Interior; and perhaps not until the lands are certified to the state does the latter acquire title.

**Laws 1889, ch. 22, is Applicable Only to Lands Belonging to the State.**

Laws 1889, ch. 22, authorizing leases of mineral lands by the state, is applicable only to lands "belonging to the state." It is not applicable to lands which have been merely selected by the state. Hence applications for leases filed with the state land commissioner prior to the approval of the selection are premature, and of no legal effect, even though recognized as valid by the commissioner.

**Premature Application, how Rendered Valid.**

But if, after the state acquires such lands, the applicant directs the attention of the commissioner to the premature application on file, and the officer then recognizes it as a valid application, it then becomes such.

**Competitive Bidding—Favored Lessee not a Trustee.**

Priority of application gives no superior right as between several applicants; but an authorized preference by the land commissioner of one of two applicants in the granting of a lease, without affording opportunity

v.54M.—2

for competitive bidding by them, does not justify an adjudication charging the applicant to whom the lease is granted as a trustee of the same for the disappointed applicant.

### Parties to Action to Cancel Such Lease.

Nor can such lease be set aside at the suit of the disappointed applicant, the state not being a party to the action.

### If the State Land Officer be a Party in Interest under the Lease He Issues.

If the commissioner should be guilty of official misconduct by being a party in interest in the favored application, so as to avoid the *application,* a lease granted thereon might be adjudged to be held in trust for the other applicant.

### Complaint Construed as not Charging Such Interest.

Complaint considered as not showing that the commissioner was interested in the applications filed by the defendant.

Appeal by plaintiffs, James H. Baker, Fannie A. Griffin and Nellie V. Griffin, from an order of the District Court of St. Louis County, *J. D. Ensign,* J., made July 13, 1892, sustaining a demurrer to their complaint.

The State of Minnesota was on January 26, 1888, entitled to indemnity school land in lieu of deficiencies in the grant. On that day the State selected, among others, twelve forty-acre tracts in sections one (1,) two (2,) four (4,) nine (9,) ten (10,) and eleven (11,) in Township fifty-eight (58) north, of Range eighteen (18) west, in St. Louis County. These selections were approved by the Secretary of the Interior in March, 1891, and a certified list passing the title to the State was sent to the Governor. He received it April 21, and filed it, in the afternoon of April 24, 1891, with the Commissioner of the State Land Office. In March, 1890, the plaintiffs filed applications for leases of this land under Laws 1889, ch. 22, supposing them to contain iron ore. On the morning of April 25, 1891, plaintiffs renewed their applications. But meantime, in the afternoon of April 24, the defendants Robert Jamison, John Mather, R. C. Elliott and H. H. Nelson filed applications for leases of the same lands. The Commissioner applied to the Attorney General for instructions, and made oral statement to him of some of the facts, and was told some rules of law applicable, which the Commissioner construed in favor of defendants, and on April 27, 1891, he issued to them leases

of the lands. The complaint set forth these facts and others, mentioned in the opinion, and prayed judgment declaring that plaintiffs have a superior right to leases of the land, and that defendants hold their leases in trust for the plaintiffs, and requiring defendants to assign their leases over to plaintiffs; or in case this relief cannot be had, then that the defendants' leases be canceled, and the land be leased anew to the applicant who will pay the largest sum therefor.

To this complaint defendant Robert Jamison demurred, and the trial court sustained the demurrer, and allowed plaintiffs twenty days to amend. They appealed.

*Young & Lightner* and *Cash, Williams & Chester,* for appellants.

Though the legal title to the lands be held to pass only upon the certification of the lists of selections, still the equitable title vests in the State upon its selection. And upon approval and certification of the lists, the legal title thereby in form conveyed, relates to the date of the selection. Such certified lists are the equivalent of a patent. *Frasher* v. *O'Connor,* 115 U. S. 102; *Williams* v. *United States,* 138 U. S. 514; *Shepley* v. *Cowan,* 91 U. S. 330.

Indemnity lands are those selected in lieu of parcels lost by previous disposition or reservation for other purposes, and the title to which, accrues only from the time of their selection. *Barney* v. *Winona & St. Peter R. Co.,* 117 U. S. 228; *St. Paul Railroad* v. *Winona Railroad,* 112 U. S. 720. The State therefore, from the time of selection, has been at least equitable owner of the land, and upon the approval of the list, the legal title passing thereby related to the date of selection, so that the State is to be deemed legal owner from the date of selection. *Wilder* v. *Haughey,* 21 Minn. 101. The applications of plaintiffs were therefore properly filed in the first instance, and the then Commissioner might properly have at once issued leases on such applications. But in any case upon the approval of the selections at Washington on March 26, 1891, and on the receipt of the certified list at the Governor's office on April 21, 1891, and on the filing of it in the State Auditor's office April 24, 1891, the applications of plaintiffs were still on file, and if not previously valid, they certainly became valid on the last if not on the second or the first of these dates, and so they antedated any applica-

tions by defendant Jamison. So that even if defendant's applications are to be deemed of any validity, still those of plaintiffs were prior in point of time. When they were made, the plaintiffs were the sole applicants. As such sole applicants, they acquired, upon the making of their application, a vested right to leases of the lands applied for. That vested right was not, and could not be, divested by subsequent applications by other persons.

In *Whiteman* v. *Severance*, 46 Minn. 495, this court held, that the right of the first applicant was subject to be defeated, if at any time before the Commissioner should act upon it, another application for the same land should be filed. We respectfully ask the court to reconsider this decision.

If plaintiffs had not a complete equity to leases on their applications, still they had a vested and complete right to compete for the leases. If Jamison's applications are deemed valid, so that plaintiffs were not sole applicants, and if, under *Whiteman* v. *Severance, supra,* their priority in time, gave them no priority of right, still their applications were pending when the Commissioner came to act on Jamison's application, and on the rule in that case it was his duty not to issue leases to defendant, but to put the leases up at auction between the applicants, to be awarded to the highest bidder. That duty he failed to perform. In the performance of that duty, the plaintiffs had a direct interest.

This being a suit in equity, the court can impose and compel performance on such terms and conditions as may be equitable, to protect the rights of everyone. And, as in case of a suit to rescind, or for specific performance, it is not necessary for plaintiffs to make any offer or tender in their complaint. Such offer is no part of the cause of action. *Coolbaugh* v. *Roemer,* 32 Minn. 445; *Knappen* v. *Freeman,* 47 Minn. 491.

*Penney & Jamison,* for respondent.

To maintain this action, plaintiffs must show that the leases which were issued to the defendant Jamison, should have been, as a matter of right, issued to them. They must recover, if at all, upon their right to the leases; not upon the lack of right in Jamison. It is not enough to show that the leases should not have been issued to Jamison. *Whiteman* v. *Severance,* 46 Minn. 495; *McKinney* v.

*Bode,* 33 Minn. 450; *Bohall* v. *Dilla,* 114 U. S. 47; *Lee* v. *Johnson,* 116 U. S. 48; *Smelting Co.* v. *Kemp,* 104 U. S. 636; *Coleman* v. *Lord,* 72 Texas, 288; *Bangs* v. *Stephenson,* 63 Mich. 661; *Hedley* v. *Leonard,* 35 Mich. 71; *Biddle Boggs* v. *Merced Mining Co.,* 14 Cal. 279; *Winona & St. P. R. Co.* v. *St. Paul & S. C. R. Co.,* 26 Minn. 179; *Sparks* v. *Pierce,* 115 U. S. 408.

The applications of plaintiffs are wholly null and void, for the reason that they were filed before the State had acquired title to the lands, and before its officers had any right to perform acts in relation to such lands. *Medley* v. *Robertson,* 55 Cal. 396; *Churchill* v. *Anderson,* 53 Cal. 212. It will be appropriate to examine the United States Statutes under which these lands are claimed by the State of Minnesota. Act of February 26, 1857; 11 U. S. Stat. 166; Act of March 3, 1857; 11 U. S. Stat. p. 254; Act of May 20, 1826; 4 U. S. Stat. 179; Act of February 26, 1859; 11 U. S. Stat. p. 385; Act of August 3, 1854; U. S. Rev. Stat. § 2449.

The complaint alleges that the list was certified by the Secretary of the Interior, and that the list was selected by the State of Minnesota. There appears, upon inspection of the laws, to be no provision for the selection of lieu lands by the State of Minnesota, or any of its officers. The only selection of lieu lands that can be made, and which is provided for by the law, is selection by the Secretary of the Interior, and certification by the Commissioner of the General Land Office. Conceding then that these lands were selected by a State officer before the applications of appellants were filed, that fact cannot be urged as giving any validity or force to these applications. The selection by the State was unauthorized, yet counsel urge, that the title related back to the time of this unauthorized selection. It may be customary for the State to designate the particular lands it desires, but the mere fact of such a designation should not be urged as giving the State equitable title from that time. The applications of the plaintiffs having been filed before the Secretary of the Interior selected these lieu lands for the State, the same are null and void. The acts under which lieu lands must be selected and certified, are the said Acts of May 20, 1826, February 26, 1859, and August 3, 1854. Some acts were necessary on the part of the Federal Government before even the equitable title to

lieu lands could vest in the State. These acts, it is evident from the laws, must be the acts of selection and certification of lists to the State by the proper United States officers. When appellants invoke the law of relation back of title, their complaint must show that the selections in question were made by the Secretary of the Interior, and certified by the Commissioner of the General Land Office. The rule as to when title in lieu lands vests in the State under the acts, which entitle the State of Minnesota to such lands, is discussed in *Wisconsin Central Railway Co.* v. *Price County,* 133 U. S. 496. If then the title to the indemnity school lands in question did not vest in the State of Minnesota until the lists were selected, approved and certified by the proper United States officials, the applications of appellants were premature and null and void.

Counsel urge in their brief that at least "the equitable title vested in the State upon its selection," and cite *Frasher* v. *O'Connor,* 115 U. S. 102. An examination of this case shows that under the terms of the grant, the selection was to be made by the State. They also cite *Williams* v. *United States,* 138 U. S. 514. The grant therein discussed provides: "Section 2. The lands herein granted shall be selected by the State authorities." There is also cited *Shepley* v. *Cowan,* 91 U. S. 330. This case discloses that the selections made were so made under the Act of September 4, 1841, which provides that selections shall be made by the State "in such manner as the Legislature should direct. The laws giving lieu lands to the State of Minnesota contain no such provisions for selection as in the cases cited by appellants. On the other hand, they provide that the selections shall be made by the United States officers. Suppose the acts contained no provision for selections, then unquestionably the right of selection would remain in the general government. *Minneapolis & St. C. R. Co.* v. *Duluth & W. R. Co.,* 45 Minn. 104.

The law providing for leases (Laws 1889, ch. 22) permits the leasing by the auditor of lands "now belonging to the State of Minnesota, or which may hereafter be acquired by it." It was not the intention of the Legislature to authorize the auditor to lease, or assume to lease, lands to which the State had not acquired full and complete title. Neither was it ever contemplated that the auditor

might perform acts of ownership in relation to lands, which perchance, might at some future date become the property of the State. To permit the auditor to receive applications for leases of lieu lands not yet certified to the State, and to permit applicants to acquire apparent rights to such lands, would lead to the utmost confusion, and would be a violation not only of the letter, but the spirit of the law. *Churchill* v. *Anderson,* 53 Cal. 212; *Oakley* v. *Stuart,* 52 Cal. 521; *Finney* v. *Berger,* 50 Cal. 248; *Medley* v. *Robertson,* 55 Cal. 397; *Garfield* v. *Wilson,* 74 Cal. 175.

It is always a matter of speculation as to what specific lands will be eventually certified to the State, and it is safe to say, and an inspection of the lists certified will bear it out, that during the entire administration of the school lands of the State, no list of selections made by the State has ever been approved and certified in its entirety. The rights of the State always yield to prior entries and dispositions. The Secretary of the Interior and Commissioner of the General Land Office are accorded by the courts the fullest discretion in the administration of their respective departments.

If plaintiffs' applications were void by reason of having been prematurely filed, then for the same reason the certificate alleged to have been issued to them by Auditor Braden was void; but even if the applications were properly and timely filed, this certificate, which it will be contended was an acceptance of the application, is void and of no effect. Its issuance is not authorized by the law providing for the leasing of lands. There is no provision anywhere to be found authorizing the auditor to issue such a certificate, or from which the issuance of such a certificate can be excused. The action of the auditor in executing the certificate implies that he did not assume to lease the lands in question, and that he was not authorized to lease the same. He merely undertook to secure to appellants prior rights against the time when he would be authorized to act; hence his act was that of an individual, not of a public officer, and has no binding effect on the State, and might properly be disregarded by his successor.

The State Auditor could act only in the manner prescribed by the statute. His acts must be limited to the provisions and obligations of the law itself. *Mayor, etc., of Baltimore* v. *Porter,* 18 Md. 284; *Keane* v. *Cannovan,* 21 Cal. 291; *Murphy* v. *City of Louisville,* 9

Bush, (Ky.) 189; *Herzo* v. *San Francisco*, 33 Cal. 134; *McCoy* v. *Briant*, 53 Cal. 247; *Iowa Railroad Land Co.* v. *County of Sac*, 39 Iowa, 124; *McDonald* v. *Mayor of New York*, 68 N. Y. 23; *The Floyd Acceptances*, 7 Wall. 666; *McClure* v. *Township of Oxford*, 94 U. S. 429; *Newbury* v. *Fox*, 37 Minn. 141; *Sutro* v. *Pettit*, 74 Cal. 332; *Daviess County* v. *Dickinson*, 117 U. S. 657.

If the application of the appellants should be regarded as valid and properly filed, then our contention is that under the rule designated in the case of *Whiteman* v. *Severance*, 46 Minn. 495, to-wit, that when the auditor came to act in the matter of leasing said lands, there were on file the applications of appellants and the respondent Jamison, it was the duty then of the auditor to issue said lease to the highest bidder therefor. That is precisely what should have been done and was not done in the case of *Whiteman* v. *Severance*, *supra*, but as in that case, from the mere fact that a lease should not have been issued to Severance, it does not follow that it should have been issued to Whiteman. So in this case if the leases were improperly issued to Jamison, there is nothing to show that they should have been issued to Baker. There is no presumption to be invoked either way. It cannot be presumed at this time that if the auditor had proceeded in the manner pointed out by this court in said case, the plaintiffs would have been the successful bidders. It cannot be urged successfully that the mere filing of an application gives the vested right to the applicant. It is a mere proposal on the part of the applicant, and no vested right is acquired by him until he has paid to the treasurer, pursuant to the order of the auditor, the sum of twenty-five dollars upon each application. That is the acceptance on the part of the auditor; and then, and only then, is the applicant entitled as a matter of legal right to a lease. It is well settled that the filing of an application gives no vested right in the property sought to be acquired. *Cadierque* v. *Duran*, 49 Cal. 356; *Frisbie* v. *Whitney*, 9 Wall. 187; *Hutton* v. *Frisbie*, 37 Cal. 475; *State ex rel.* v. *Gray*, 4 Wis. 380; *State ex rel.* v. *Janssen*, 2 Wis. 423; *Gough* v. *Dorsey*, 27 Wis. 119; *State ex rel.* v. *School Commissioners*, 6 Wis. 334; *The Yosemite Valley Case*, 15 Wall. 77.

In view of the case of *Whiteman* v. *Severance*, and fearing that it would be decisive of the case at bar, plaintiffs ask that if the court

will not declare Jamison a trustee, that then and in that event the lease to Jamison be canceled and set aside, and that plaintiffs be permitted to bid against Jamison for leases. It is noticeable that plaintiffs have not offered to bid for such leases as against Jamison. There is no guaranty or assurance that if the leases were canceled, plaintiffs would bid therefor. They would be satisfied if Jamison could be annoyed by the cancellation of his leases. But plaintiffs overlook the fact, which fact is decisive of this point, that the State of Minnesota has rights which must be protected in this litigation, and that the leases cannot be canceled until the State is made a party and is heard on the point. Plaintiffs must have vested rights sufficient to control the legal title before the court can give them relief. The matter of the forfeiture and cancellation of the leases can be urged only by the State. *Gaines* v. *Nicholson,* 9 How. 356; *Richards* v. *Snyder,* 11 Oreg. 501; *Woodbury* v. *Dorman,* 15 Minn. 338; *Minnesota Land & Invest. Co.* v. *Davis,* 40 Minn. 455; *McKinney* v. *Bode,* 33 Minn. 450; *Smelting Co.* v. *Kemp,* 104 U. S. 636; *Lee* v. *Johnson,* 116 U. S. 48.

DICKINSON, J. This is an appeal by the plaintiffs from an order sustaining a demurrer to the complaint. The plaintiffs claim to have acquired a right to leases from the state of certain mineral lands, in accordance with the provisions of Laws 1889, ch. 22. Leases having been executed to the defendant, Jamison, the plaintiffs seek by this action an adjudication to the effect that their right to such leases was superior to that of the defendant; that they are in equity entitled to the same; that the defendant be adjudged to hold the leases in trust for the plaintiffs; that a transfer of the same to the plaintiffs be adjudged, or, alternatively, that the leases be canceled, and that the right of the parties to acquire leases be determined by competitive bidding therefor under the statute as it was construed in *Whiteman* v. *Severance,* 46 Minn. 495, (49 N. W. Rep. 255.) The sufficiency of the complaint, as setting forth a cause of action, is to be decided.

The lands in controversy are a part of the indemnity school lands granted by the United States in lieu of deficiencies in the school land sections, (16 and 36.) It is claimed that the state selected these lands, and filed a list thereof in the United States land office in Jan-

uary, 1888, but it appears from the complaint that not until March, 1891, was this selection approved and certified by the Secretary of the Interior. This certified list of lands was transmitted from the general land office to the governor of the state in April, 1891. It was received by the governor as early as April 21st, and on the 24th of April delivered to the commissioner of the state land office.

It is averred in the complaint that, upon the passage of Laws 1889, ch. 22, relating to the leasing of mineral lands, the state auditor made a rule that in awarding leases under that law if there should be more than one application for a lease of any parcel of land, the lease should be awarded to the person making the first application, and who should in other respects comply with the requirements of that act. While this rule was in force, but before the approval and certification of the lands by the department of the interior, and, as it seems, as early as March, 1890, the plaintiffs presented to W. W. Braden, then commissioner of the state land office, applications in proper form for mineral leases of the lands in question. Such applications were by the commissioner accepted and filed in his office as proper and sufficient applications under the statute, the commissioner determining and certifying that the plaintiffs were entitled to leases when the lands should be conveyed to the state; but, for the reason that the lands had not been patented to the state by the United States, the commissioner refused to give orders, as prescribed by the law, for the payment to the state treasurer of the money required to be paid before leases are to be granted, and, because such order was not given, the state treasurer refused to receive the money, although the plaintiffs tendered payment. The plaintiffs' applications were the only ones that were made for leases of these lands, excepting those of the defendant, Jamison.

The certified list of these lands, transmitted to the governor as above stated, was delivered to the state land commissioner, A. Bierman, (who had succeeded Mr. Braden in that office,) in the afternoon of April 24, 1891. Thereafter, and on the same day, the applications of the defendant, Jamison, for leases of these lands were filed, upon which applications leases were some days subsequently executed to him, by direction of the commissioner.

On the morning of the 25th day of April, 1891, as soon as the plaintiffs learned of the approved and certified list of lands having been

received in the state land office, they applied to the then commissioner for leases upon the applications previously filed by them, and of which, as well as of the action of the former commissioner thereon, Mr. Bierman had long before been fully informed. The plaintiffs then called the attention of the commissioner to their applications on file, to the action of the former commissioner thereon, and to the rule adopted by him in respect to applications of this nature. They also on that day paid the requisite sums of money to the state treasurer. The commissioner then recognized the plaintiffs' rights by reason of such applications, and determined that they were entitled to leases, which he directed to be prepared.

The complaint further sets forth that, after the filing of the plaintiffs' original applications, the defendant, Jamison, and others entered into an agreement and combination for the purpose of acquiring leases of the same lands, knowing the facts before stated relative to the prior filing and acceptance of the plaintiffs' applications, and that the commissioner, Mr. Bierman, "became a member of such combination," and was such when the leases were issued to Jamison. It is alleged that the members of the combination, for the accomplishment of such purposes, and to defeat the plaintiffs, contrived to have the certified list withheld from delivery to the commissioner, and its receipt by the governor kept secret, until the formal applications of the defendant had been prepared ready for filing, and that the leases to the defendant were executed by the commissioner in fulfillment of such agreement, and to carry out the purposes of the combination.

We are referred to the following laws of congress as being the laws under which the state acquired the lands, and which regulated the manner of such acquisition: (1) The act of February 26, 1857, authorizing the formation of a state government (11 U. S. Stat. 166; 1878 G. S. p. 16, § 5, subd. 1.) (2) Resolution of congress of March 3, 1857, (11 U. S. Stat. 254.) (3) Act of May 20, 1826, (4 U. S. Stat. 179.) (4) Act of February 26, 1859, (11 U. S. Stat. 385; U. S. Rev. Stat. §§ 2275, 2276.) And (5) Act of August 3, 1854, (U. S. Rev. Stat. § 2449.) But we find it unnecessary to consider the nature of the rights which the state may have acquired under the statutes above cited by its mere selection. It certainly did not acquire any title thereby. It seems to be conceded on the part of the appel-

lants, and it cannot well be questioned, that any selection made by the state would be ineffectual to transfer the title from the United States to the state, at least until such selection should be approved by the Secretary of the Interior. Until then, at least, if not until the certification of such lands to the state pursuant to the provisions of U. S. Rev. Stat. § 2449, the lands selected by the state were not subject to the operation of Laws 1889, ch. 22. That law we deem to be applicable only to lands "belonging to the state." This language, both in the body of the law (section 1) and in the title, indicates this as being the proper and most natural construction, if, indeed, there is any room for construction. Besides, it is hardly to be supposed that the legislature could have intended to authorize leases of, and the prosecution of mining operations on, lands of the United States of which it might never secure the title.

Only under the act of 1889 can any rights have been acquired in these lands. Only by force of this statute was the land commissioner authorized to make leases, and the conditions under which he might do so are prescribed by that statute. As the act is applicable only to lands belonging to the state, and as these lands did not in any sense belong to the state when the plaintiffs filed their applications, prior even to the approval of the selections by the Secretary of the Interior, such filing was not authorized by the law or within its contemplation, and the plaintiffs acquired no rights or advantage thereby. It was of no legal effect. *Finney* v. *Berger*, 50 Cal. 248; *Lansdale* v. *Daniels*, 100 U. S. 113. Nor did the action of the former commissioner, Mr. Braden, give effect or validity to such applications.

Being thus unauthorized and ineffectual, such applications did not acquire validity and become effectual, of themselves and without further proceedings, upon the filing of the selected lists of lands, approved and certified, in the office of the state land commissioner. *Lansdale* v. *Daniels, supra*. But when, after the filing of such lists, the plaintiffs directed the attention of the commissioner to their applications then on file, and when the latter accepted and recognized them as proper applications, we think that the purposes of the law were accomplished. The purpose of the requirement as to making formal applications was to inform the land commissioner, in order that he might properly discharge his duties in respect to

the making of leases and contracts. As between several applicants, priority of filing would give no advantage. *Whiteman* v. *Severance*, 46 Minn. 495, (49 N. W. Rep. 255.) Hence it was not important that the filings indorsed on the several applications should show when, or in what order, the applications were presented. It was not essential that the applications should show by indorsed dates of filing, or otherwise, when they were presented at the office, although such filings doubtless ought to be made for purposes of authentication and proof, and as the orderly course of proceeding. Therefore the plaintiffs' applications on file gave them the rights of applicants when the commissioner, Bierman, accepted and treated them as valid, the parties then having the right to file applications. If the applications had been withdrawn from the hands of the commissioner, as they might have been, and immediately returned to him as renewed applications, they would have been valid. But that empty formality was not necessary.

Our conclusion on this branch of the case, as presented in the complaint, is that the plaintiffs' applications became effectual before the leases were made to the defendant, and the question as to which of the applicants should be preferred ought to have been determined by competitive bidding between them, as was decided in *Whiteman* v. *Severance, supra.* But, as was also decided in that case, the unauthorized preference of one of the applicants, the other not being afforded an opportunity to bid for the preference, would not justify an adjudication charging the former as trustee for the latter. Nor do the facts that the plaintiffs were not afforded an opportunity to bid in competition with the defendant, and that leases were erroneously awarded to the latter, afford a sufficient ground for setting them aside, so as to permit the parties to enter into competitive bidding for leases. The state is one of the two parties to the leases which have been made to the defendant, and, the state not being a party to this action, the leases cannot be judicially annulled.

Under the decision in *Whiteman* v. *Severance, supra,* to which we adhere, the plaintiffs cannot prevail upon the facts stated in the complaint, unless the complaint alleges such corrupt misconduct on the part of the state land commissioner, so connected with the applications filed in the name of the defendant, that such applica-

tions should be declared to have been void.    It may well be assumed that if these applications were void,—of no legal effect,—so that the plaintiffs' applications were to be regarded as having been the only legally effectual filings, the plaintiffs would have been entitled to leases, and that in such a case the defendant might be adjudged to hold the leases made to him in trust for the plaintiffs.    But we are of the opinion that the complaint does not show such conduct on the part of the commissioner as would render void the defendant's applications.

It is probably true that if the commissioner was a party in interest with the defendant in the applications filed in the name of the latter, it being agreed that the officer was to share in the benefits to be derived therefrom, considerations of public policy would forbid that legal validity should be ascribed to the applications.    But the complaint does not allege such a state of facts, and the allegations of a pleading are not to be extended by mere inferences of official misconduct.    The complaint does not allege that the officer had, or that it was ever agreed or even understood that he was to have, any interest in the leases applied for by the defendant.    In construing the pleading it is not to be legally inferred that such was the case from the facts alleged,—that, an agreement and combination having been formed between the defendant and divers other persons for the purpose of acquiring leases of these lands for their joint benefit, the officer "became a member of such combination."    Not only is there no averment that the commissioner ever had any personal interest in the transaction, but he is not made a party to the action, which fact lends support to the conclusion, resting chiefly, however, upon the construction of the complaint itself, that the plaintiffs did not intend to rest their case on the fact that the officer was himself a party in interest in the transaction.

A distinction is to be observed between a case where the officer has himself an interest in an application concerning which he is to act officially,—which might of itself render void the application,— and a case where the officer acts erroneously, or even wrongfully, in furtherance of an application or claim in which he is not thus interested.    This complaint seems to fall under the latter class, and, however culpable might be such conduct as is there ascribed to the officer, it did not render void the applications of the defendant.

What is alleged as having been done prior to, or at the time of, the filing of these applications, seems to have been directed to the end of enabling the defendant to be the *first* to file applications after the approved list of lands should be received from Washington, and filed in the state land office. But that did not prejudice the rights of any others who might desire to apply for leases of the same land, for as we have already said, and heretofore decided, priority of application gave no superior right. Hence, even if the officer did improperly, or even with the wrongful intent of favoring this defendant, contrive to enable him to make the first filing, that did not render that filing or application void. The defendant had an absolute right to make the application, and, whether it was made before or after others should exercise the same right, its legal effect would be the same. As to what was done after the filings had been legally made, for the purpose of favoring and preferring the defendant's claim, it is enough, for the purposes of this decision, to say that it had no retroactive effect, so as to render the applications invalid and void; and, as has been already said, the plaintiffs' right to have it declared that the leases are held in trust for them depends upon the proposition that the plaintiffs were, in legal contemplation, the *only* applicants. If the state were a party to the action, so that the leases might be judicially avoided, the allegations as to the conduct of the commissioner and of the defendant subsequent to the filing of the applications would have a different bearing, and might be deemed to constitute sufficient ground for setting aside the leases.

For the reasons here stated, we are of the opinion that the court ruled correctly, and the order is affirmed.

VANDERBURGH, J., did not sit.

(Opinion published 55 N. W. Rep. 749.)