## STATE EX REL. MARSH v. STATE BOARD OF LAND COMMISSIONERS.

STATE LANDS, LEASING OF — JURISDICTION AND POWER OF STATE BOARD — CANCELLATION OF LEASE — MANDAMUS — INDIVIDUAL RIGHTS TO STATE LANDS.

1.   The State can not lawfully execute and put in force, separate leases of State lands to different persons covering the same land and the same period of time.

2.   The court should not require the State Board of Land Commissioners to execute and deliver a lease to one person, and thereby confer upon him a lessee's title, while another lease covering the same land is in force, held by another party.

3. It is elementary in our jurisprudence, that any person whose interests are directly involved in a legal proceeding, shall have an opportunity to be heard, before a judgment can be rendered, determining and concluding his rights.

4. Although the State board possesses authority to cancel any lease of State lands, which may have been procured by fraud, deceit, or misrepresentation upon proper proof thereof, yet, after execution and delivery of a lease, no such cancellation should be ordered without a hearing.

5. Where the State board has executed and delivered a lease to one person, the court has no authority or jurisdiction in a proceeding, where such lessee is not a party, to determine his rights and to command the cancellation of his lease.

6. The State board having executed and delivered a lease for certain State lands to one person, and the relator in a mandamus proceeding claiming to be entitled to have a lease for the same lands executed to him, and alleging that the lands were wrongfully leased to the other person: *Held*, that the lessee not being a party to the proceeding, the court is without authority or jurisdiction, to order or command the cancellation of his lease, and while that lease is in force, the board should not be required to execute and deliver to relator another lease for the same land.

7. Although the board, after a hearing, may have refused to cancel the lease complained of, and although this court may possess authority by mandamus, to review the action of the board in the matter, and to direct the order it should make in the premises, the objection to such review, by the court, in a cause in which the lessee is not a party, still remains.

8. It is a general rule that a judicial discretion vested in a board, will not be controlled by mandamus.

9. To authorize the issuance of a writ of mandamus, to control the action of the State Board of Land Commissioners, the act sought to be commanded, must be one which is specially enjoined by law as a duty, resulting from an office, trust, or station, and in respect to which there is involved no judicial discretion.

10. It is not the office of a writ of mandamus to set aside decisions of an inferior tribunal.

11. The State Board of Land Commissioners being expressly authorized by statute to determine the claims of each person who may claim to be entitled, in whole or in part, to any land

owned by the State; and the statute providing that the decisions of the board shall be final until set aside by a court of competent jurisdiction; where the board has determined the rights of contesting parties to certain lands, and has by such determination refused to cancel a lease already executed, and to execute a lease to the contestant, its determination and decision will not be reviewed in a mandamus proceeding; the court not being permitted to presume that its decision was controlled by anything other than conscientious and impartial motives.

12.  The exercise of the power conferred upon the State Board of Land Commissioners to lease the lands of the State in the manner and to the parties which shall inure to the greatest benefit and secure the largest revenue to the State, requires judgment and discretion.

13.  The judgment and discretion to be exercised in such matters are judicial in character, and in an application for the writ of mandamus it is not proper for the court to interpose its opinion and judgment in the place of that of the board, even if the conclusion which the latter has reached upon the facts should appear to have been erroneous.

14.  Having allowed an application to lease certain lands, the board has the legal right and authority, at least in the absence of collusion or fraud, upon reasons appearing satisfactory to it, to revoke the order allowing the application, prior to the execution and delivery of a lease; and in mandamus, in the absence of collusion or fraud on the part of the board, the court can not review its decision upon that matter.

15.  The provisions of the law concerning the disposition and leasing of State lands do not rest upon the acquirement of any individual rights, except in the case of certain actual settlers upon school lands; but the reigning feature of the law is the benefit to be derived by the State, while those who may have lawfully placed improvements upon lands are sought to be reasonably protected.

16.  The law does not recognize any superiority of right in prior applications; but the board should so conduct their proceedings, that while observing the spirit and letter of the statute, and subserving the best interests of the State, partiality and favoritism will be avoided. This will probably be more surely accomplished by a general observance of the moral rights of a prior applicant who is able and willing to pay as much as one whose application is filed at a subsequent time.

17. In mandamus to compel the State board to cancel a lease on the ground that it was procured for the benefit of another party, thereby violating the condition of the Congressional grant, if it should be conceded that the alleged fact would operate to invalidate the lease, the court must assume that, in the proceedings before the board, the fact was decided adversely to the charge made by relator.

18. Whether any one except the State or the United States could complain of a lease of State lands procured for the benefit of another by one who has already leased the maximum quantity permitted by the act of Congress granting the lands to the State, *quere?*

[Decided June 8, 1898.]

Original proceeding in mandamus by which France Marsh, the relator, sought the order of the court requiring the State Board of Land Commissioners to enter into a lease with relator for certain school lands, and to cancel a lease issued to another person for said lands. The facts are stated in the opinion.

*W. R. Stoll*, for the relator.

*J. A. Van Orsdel*, Attorney-General, for the respondent.

State boards can be directed to act, but not how to act in a manner as to which they have the right to exercise their judgment, and where they are vested with power to determine a question of fact, the duty is judicial, and however erroneous their decision may be, they can not be compelled by mandamus to alter their determination. (Hoole v. Kincaid, 16 Nev., 217; State v. Scott, 17 Nev., 686; Shober v. Cochrane, 53 Md., 544; State v. Gregory, 83 Mo., 123.) To justify the issuance of the writ of mandamus to enforce the performance of an act by a public officer, two things must concur; the act must be one the performance of which the law specially enjoins as a duty resulting from the office, and an actual omission on the part of the respondent to perform it. It is incumbent on the relator to show not only that the respondent has

failed to perform the duty required, but that the performance thereof is actually due from him at the time of the application. (State v. Gracey, 11 Nev., 233; State v. Carney, 3 Kan., 88; State v. Dubuclet, 24 La. Ann., 16; State v. Burback, 22 La. Ann., 298; Commissioners v. Co. Commis'r, 20 Md., 449.) Where the duties imposed upon State boards are deliberative and discretionary, mandamus will not lie. (People v. Dental Examiners, 110 Ill., 180; State v. Gregory, 83 Mo., 123; Shober v. Cochrane, 53 Md., 544; People v. State Prison, 4 Mich., 187; People v. Canal Board, 113 Barb. (N. Y.), 432; State v. Verner, 30 S. C., 713.) If an inferior tribunal has a discretion and proceeds to exercise it, then its discretion should not be controlled by mandamus. (Union Colony v. Elliott, 5 Colo., 371; Freeman v. New Haven, 34 Conn., 406; Ex parte Black, 1 O. St., 30; Ex parte Davenport, 6 Peters, 661; Poltney v. La Fayette, 12 id., 472; Postmaster-General v. Trigg, 11 id., 173; Ex parte Railway Co., 101 U. S., 711; Ex parte Burtis, 103 U. S., 238.)

POTTER, CHIEF JUSTICE.

This cause was heard upon a demurrer to the petition for a writ of mandamus. The relator, France Marsh, filed his petition praying that a writ of mandamus issue commanding the State Board of Land Commissioners to execute and deliver to the relator a lease for Section 16, in Township 19, North of Range 65, West of the Sixth Principal Meridian, situated in the county of Laramie, for the period of five years, and to cancel the lease executed by the respondent to one George S. Raynes for said land.

When the attention of the court was called to the petition by counsel for relator, a time was fixed by request of such counsel for a hearing upon the application, without the issuance of an alternative writ, and notice was, by order of the court, directed to be given to the respondent. At the time appointed for the hearing the attorney-gen-

eral, representing respondent, interposed a demurrer to the petition, which challenged the right of the relator to the writ upon the facts alleged in the petition.   The point urged in opposition to the application is that the board, in respect to the matters in controversy, was vested with a judicial discretion, and with power to determine the facts, and that such discretion will not be interfered with by mandamus.

Stated as briefly as seems desirable, the petition alleges in substance the following, which, for the purposes of the demurrer, must, so far as the facts are concerned, be taken as true.

That relator is, and was at the time of his application to lease, the owner and occupant of a homestead in the county of Laramie immediately adjoining the land in question, having resided upon such homestead for the past six years; that it is his intention to inclose said Section 16 with a fence, and to use and occupy it for agricultural and grazing purposes in connection with his homestead, and in the event of a sale of said section to purchase the same.   That the governor, secretary of state, and superintendent of public instruction constitute and compose the State Board of Land Commissioners, the officer last named being the register of the board, whose duty it is, among other things, to make out and countersign all leases issued by the board of State lands, and to keep a suitable record of the same.   Certain provisions of the constitution and laws relating to the leasing of State lands are then set out by general averment, and that on the 10th day of July, 1890, the Congress of the United States duly granted to the State sections numbered 16 and 36 in every township, which are commonly called school lands, which grant was made with the proviso that such lands might be leased for periods of not more than five years, in quantities not exceeding one section to any one person or company.

That on the 12th day of June, 1897, the relator applied, in accordance with the rules, regulations, and forms

adopted by the board, for a lease for five years for said Section 16, the application being accompanied with an affidavit as to the value of the land as required by the rules of the board; and that on the 30th day of July the board officially notified the relator that his application had been allowed at an annual rental of sixteen dollars, and directed him to execute the required bond, and have the same duly approved, and return it to the board with an amount sufficient to cover the first year's rental, and the lease would be issued and forwarded to him. That, within the time prescribed by the regulations of the board, viz., three months, the relator did tender the bond duly executed and approved, together with the first year's rental, and demanded a lease, but the same was refused. The manner in which the land had been previously leased is alleged to have been as follows: In December, 1891, it was leased for five years from January 10, 1891, to one Dennis H. Harrington; on January 17, 1896, a lease was executed to one George S. Raynes. It is alleged that Harrington was an employee of the Warren Live Stock Company, a corporation, and was not a bona fide applicant, but that he procured his lease through fraud, deceit, and misrepresentations in this, that he was not the owner of any improvements on the land, and did not contemplate using or occupying the same for any purpose of his own; and it is averred that during the continuance of his lease he did not, in fact, occupy it, nor personally use it; that he was a man without property, and made his application in the interest of the company by whom he was employed; and that said company had already leased and continued to lease a full section of school lands. The lease executed to Raynes, it is alleged, is null and void, for the following reasons: 1. Because it was executed previous to the filing of any application by him, the same not being filed until January 23, 1896. 2. Because the annual rental had not been paid by him until after relator had filed a protest against such lease. 3. Because no bond was filed by said lessee previous to said protest. 4.

Because his application was made and procured by fraud, deceit, and misrepresentation on his part, in this, that he was not the owner of the alleged improvements on the section, and did not lease it for any purpose of his own, but for the benefit of the Warren Live Stock Company, the said applicant being an employee of that concern.

· It further appears by the petition that on September 22, 1897, the relator was informed in a communication from the board that it had received information to the effect that his application had misstated the improvements upon the land, and that until he should file a bill of sale for the improvements the lease to him could not be executed, and on the 25th day of September, 1897, the board, by letter of the register, informed the relator that he would be allowed until October 5, 1897, to comply with the law as to procuring title to the improvements, and that the action of the board allowing his application would be revoked until he could show such title.   On the 3d day of November, 1897, the following order was made by the board, and entered upon its records:

"In the case of the application of France Marsh to lease Section 16, Township 19 N., Range 65 W., the following resolution was offered: 'Whereas, The State board, acting under misapprehension as to the improvements located on Section 16, Twp. 19 N., Range 65 W., did on the 24th day of July, 1897, grant to one France Marsh a lease of said section; and Whereas, It now appearing that there are located on said section certain improvements not the property of said France Marsh: Now, therefore, under the authority granted the board by Section 26, Chapter 79, Session Laws of 1890, 1891, be it resolved that the action granting a lease to France Marsh is hereby revoked and rescinded.'" "Resolution Adopted." Previous thereto a hearing had ·been had upon a protest against the threatened action of the board refusing to execute his lease, which protest is set out in the petition, and covered substantially all the facts now alleged as ground

for mandamus. In that protest and in the petition herein, the claim is made that the improvements are not of a permanent character, but consist of a small cabin not built upon any foundation, but capable of easy removal by wagon, and of some posts set in the ground which are used occasionally to support movable panels, and with them constituting a corral into which sheep are driven. It is charged that all the improvements belong to the above mentioned company; that the cabin has been only occasionally occupied, and then by a sheep herder in the employ of said company, that no fence incloses the section, and the sole use of the land had been the grazing of sheep thereon and an occasional use of the corral. The value of the improvements is alleged to not exceed $25, and that value was placed upon them in relator's application, in which relator stated that he did not know who the owner was. It was, and is, alleged that relator had offered to pay the company aforesaid the reasonable value of the improvements, but it would not agree upon any value nor accept any price from the relator, and that the board had not placed any value thereon.

At the hearing before the board the relator introduced proof by affidavits and the oral testimony of witnesses, touching the previous occupancy of the premises, the character and value of the improvements, and the fact, as alleged, that Raynes did not possess any property. No other evidence was offered than that produced by the relator. It is also alleged in the petition that relator had been informed that the board considered that Raynes had forfeited his right to any lease.

Although it is not specifically so alleged, the inference may be drawn from the allegations of the petition that Raynes, after relator's protest, complied with the regulations and paid the rental, and it is not stated that it was leased to Raynes for a less sum than relator was to pay. The lease to Raynes is treated by the relator as a subsisting executed lease, but is challenged as null and void. We are asked to command a cancellation of that lease, and the execution of one to the relator.

The necessity for a cancellation of the lease to Raynes before one can be executed to the relator is obvious, as it is clear that the State can not lawfully execute and put in force separate leases to different persons covering the same land, and the same period of time. It is equally clear that the court should not require the board to execute and deliver a lease to the relator, and thereby confer upon him a lessee's title to the land while another lease is in force held by another party.

At the outset we are confronted with the fact that the present lessee is not a party to this proceeding, and with the question whether the court has authority in the absence of such lessee to determine his rights and to command the absolute cancellation of his muniment of title. It is elementary in our jurisprudence that any person whose interests are directly involved in a legal proceeding should have an opportunity to be heard before a judgment shall be rendered determining and concluding his rights.

Incidentally, this matter was referred to in the case of Baker v. Jameson, 54 Minn., 17. That was an action brought by certain persons who claimed a superior right to lease certain State lands against another to whom leases had been issued by the proper State authorities; and the purpose of the action was to secure a decree adjudging that the defendant held his lease in trust for the plaintiffs. In the course of the opinion the supreme court of Minnesota said, "The State is one of the parties to the leases which have been made to the defendant, and the State not being a party to this action, the leases can not be judicially annulled."

It is difficult to perceive what jurisdiction we would have in this case to make a determination which would be binding upon Raynes, the lessee. He is in possession of a lease executed between himself and the proper State authorities, and is presumably in possession of the land. It is true that the State Board possesses authority by express provision of the statute to cancel any lease which may have been procured by fraud, deceit, or misrepresenta-

tion upon proper proof thereof; but after the execution and delivery of a lease, no such cancellation should be ordered without a hearing. Delles v. Bank, 50 Pac., 190 *ante*. If it be said that there has been such a hearing, and that the board has refused to cancel the lease, and that this court is authorized in this proceeding to review the action of the board in that matter, and to direct the order it shall make in the premises, the objection to such review by the court in a cause in which the lessee is not a party still remains.

There are further and equally potent reasons why the relator is not entitled to the relief sought in this case.

The general rule that a judicial discretion vested in a board will not be controlled by mandamus was recognized and followed by this court, in the case of the State ex rel. Foote v. Board of Live Stock Commissioners et al., 4 Wyo., 126; and Mr. Justice Clark in the opinion rendered in that case quoted the following language from the opinion of the supreme court of Nevada, in Hoole v. Kincaid, 16 Nev., 217, with approval: " A subordinate body can be directed to act, but not how to act in a matter as to which it has the right to exercise its judgment, and where it is vested with power to determine a question of fact the duty is judicial, and however erroneous its decisions may be, it can not be compelled by mandamus to alter its determination;" and this court in the case cited, held that the exercise of the power conferred upon the Live Stock Board, or its secretary, to hear and determine the question of the ownership of estrays, which had been sold under statutory provisions, was the exercise of judicial functions, and it was said, " Such being the case, how can it be claimed that in a proceeding of this nature, we can review the case made before the secretary, and if in our judgment it should appear that the secretary erred in the conclusion which he reached, issue the writ, thus transforming a proceeding in mandamus into an appellate proceeding to vacate, modify, or reverse the decision of an official clothed with limited judicial power."

Our statute relating to mandamus defines it as a writ issued in the name of the State to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. Rev. Stat. 3073. And it is further provided, "although it may require an inferior tribunal to exercise its judgment, or to proceed to the discharge of any of its functions, it can not control judicial discretion." Id., Sec. 3074. And this latter provision it was said in State ex rel. Foote v. Board supra is no new doctrine, but "simply emphasizes the rule which almost universally existed at common law."

In the case at bar, then, there is no authority for the issue of the writ, unless the act sought to be commanded is one which is specially enjoined by law as a duty resulting from an office, trust, or station, and in respect to which there is involved no judicial discretion.

The constitution invests the board under such regulations as may be provided by law with the direction, control, disposition, and care of all State lands. Art. 18, Sec. 3; Art. 7, Sec. 13. A large discretion has been conferred by statute upon the board in the matter of leasing and sale of State lands. Chapter 79, Laws of 1890, 1891. Section 16 authorizes the board to lease any legal subdivision at an annual rental of not less than five per centum per annum on the valuation thereof fixed by the board; and Section 22 provides that "The board shall lease all State lands in such manner and to such parties as shall inure the greatest benefit and secure the greatest revenue to the State." Section 44 is as follows: "The board may herein determine the claims of each person who may claim to be entitled, in whole or in part, to any land owned by this State. The decisions of the board shall be final until set aside by a court of competent jurisdiction. The board may establish such rules and regulations as in its opinion may be proper to prevent fraudulent applications being granted."

It is not the office of a writ of mandamus to set aside

decisions of an inferior tribunal. The determination of the board in the matter in controversy, both as to cancellation of the lease to Raynes and the issuance of a lease to the relator, was one which it was expressly authorized to make. We are not permitted nor are we inclined to indulge a presumption that its decision was controlled by anything other than conscientious and impartial motives.

The exercise of the power conferred upon the board to lease the lands of the State in the manner and to parties which shall inure to the greatest benefit and secure the largest revenue to the State, requires judgment and discretion. No inflexible rule is laid down for the guidance of the board in those matters. The judgment and discretion to be exercised is judicial in character, and in an application for the writ of mandamus it is not proper for the court to interpose its opinion and judgment in the place of that of the board, even if the conclusion which the latter has reached upon the facts should appear to have been erroneous.

In the State of Colorado the constitutional provisions and statutory regulations concerning the disposition of State lands are in many respects quite similar to those found in our own State constitution and statutes. In that State, where the State Board of Land Commissioners had regularly sold certain lands, receiving part of the purchase price, and the remainder being tendered, the purchaser acting in good faith, and having complied with all the conditions of the purchase, it was held that mandamus would lie to require the execution and delivery of the patent; but the conclusion of the court was based upon the proposition that the limit of the discretion of the board had been reached, and that after the sale had been consummated the statute was specific as to the execution of a patent. In the same case, however, when subsequently before the court, it was said, "But so long as the exercise of the power to sell lands rests entirely within the discretion of the board, and its procedure complies with the substantial requirements prescribed, however much

the court may differ from the board as to the wisdom of its action, until some showing is made that such action has been influenced by fraud or collusion, it can not interfere." Greenwood Cemetery Land Company v. Routt et al., 17 Colo., 156; Routt v. Greenwood Cemetery Land Co., 18 Colo., 132.

It is required by our law that any person applying to lease State lands upon which there are improvements belonging to another person shall, before a lease shall be issued to him, file in the office of the board a receipt showing that the price of such improvements as agreed upon between him and the owner thereof, or as may be fixed by the board, has been paid to such owner in full, or such applicant shall make satisfactory proof to the board that he has tendered to such owner the price so agreed upon, or fixed by the board. (Laws 1890–91, Chap. 79, Sec. 25.) Sec. 26 provides: "Any lease for State lands procured by fraud, deceit, or misrepresentation, may be cancelled by the board upon proper proof thereof." The order of the board incorporated in the petition indicates that the grant of lease to the relator was revoked in pursuance of Section 26, although no lease to him seems to have been executed, and certainly none had been delivered.

We can not, at least in mandamus, in the absence of any showing of collusion or fraud on the part of the board, review its decision upon that matter. Having allowed the application of relator to lease the lands in controversy, the board had the legal right and authority, certainly in the absence of collusion or fraud, upon reasons appearing satisfactory to it, to revoke their order allowing the application, prior to the execution and delivery of a lease.

Again we have searched the statute in vain to discover the recognition of any preferred rights in one situated as the relator to lease school lands. The constitution and statute does recognize a superior claim on the part of certain actual settlers to purchase school lands, and the provisions of the law covering the disposition and leasing of

the lands granted to the State by Congress do not seem to rest upon the acquirement of any particular right by individuals, or the benefit or advantage which may accrue to them as determining the persons to whom sales or leases shall be made, except as already indicated in the case of certain actual settlers. But the reigning feature of the law seems to be the benefit to be derived by the State, while those who have lawfully placed improvements upon the lands are sought to be reasonably protected. There is no express recognition of a superiority of right in prior applications. No doubt the board should so conduct their proceedings that while observing the spirit and letter of the statute, and subserving the best interests of the State, partiality and favoritism would be avoided; and this will probably be more surely accomplished by a general observance of the moral rights of a prior applicant if he is able and willing to pay as much for the privilege as one whose application is filed at a subsequent time.

In Minnesota where, although valuable personal rights in a lessee seem to be recognized by the laws of that State, the board having in charge the leasing of State lands is required to secure as large a sum as possible for the State, it was held that mere priority of filing an application for a lease gave no vested rights. Whiteman v. Severance, 46 Minn., 495. And it was held or suggested that an opportunity for honorable competition should be given in case of several applications.

In the case at bar, however, the application of Raynes was prior in time to that of the relator; and notwithstanding that he had not complied with the conditions upon which leases are granted and issued within the time prescribed by the rules and regulations of the board, no reason is to be observed why the board may not, if they deem it advisable, overlook that matter of time and issue the lease, when the conditions are complied with, at least if no positive legal rights of other persons have intervened to prevent it; and it appears from the petition that the relator knew when he filed his application that one

had previously been made by the present lessee, although it is true that he states that he was informed that the board considered that the right of the former applicant had been forfeited.

No provision of the law has been pointed out, and we have observed none, which prohibited the board from legally executing a lease to Raynes under the circumstances alleged in the petition, and therefore we are unable to perceive by what authority it can be said that such lease executed and delivered to him is null and void. It may be that the facts presented to the board upon the protest of relator, and that all the circumstances connected with the matter are such that the board should have decided and acted differently, but, as already stated, the judgment and discretion of the board in relation thereto is not subject to control by mandamus, and in this proceeding we can not review its decision.

The remaining contention may be briefly disposed of. It is urged that the lease procured by the present lessee was procured for the benefit of another who had already leased one section, and that the congressional condition attached to the grant of the lands to the State was thereby violated.   Should it be conceded that if in case the lease was procured by Raynes for the benefit of another party, that would operate to invalidate the lease to him, the court must assume in this proceeding that such fact was decided by the board adversely to the charge made by the relator.   We are inclined, however, to consider it doubtful if that question can be raised in this proceeding, as neither the State nor the United States are complaining; but as to that we do not express a decided opinion.   In the case of Godwin v. Davis, 74 Miss., 742, it was held that a citizen of the State in an action brought for the cancellation of certain patents issued by the State for lands which had been granted to the State by Congress under the condition that they should not be sold for less than $1.25 per acre, could not complain of the fact that the lands had been sold, and the

patents issued by authority of the Legislature, for fifty cents per acre, neither the State nor the United States being a complaining party.

For the reasons above stated we are clearly of the opinion that the petition does not state sufficient facts to authorize the allowance of the writ, and the demurrer must therefore be sustained.

*Demurrer sustained.*

CORN, J., and KNIGHT, J., concur.