[Civil No. 1623.   Filed May 21, 1919.]

[181 Pac. 181.]

THOMAS E. CAMPBELL, MIT SIMMS, WILEY E. JONES, HARRY S. ROSS and JESSE L. BOYCE, Composing the State Land Department of Arizona, W. A. MOEUR, State Land Commissioner, P. J. MUNCH, Deputy State Land Commissioner, and B. O. PICKARD, Chief of Leasing Division of State Land Department, Appellants, v. T. M. CALDWELL, Appellee.

1. PUBLIC LANDS — ARIZONA LANDS — INSTITUTIONAL GRAZING LAND LEASE.—Under Public Land Code, sections 2, 3, 8, 9, 30–32, the negotiations for the leasing of institutional grazing land is to be carried on by the State Land Commissioner, but his acts and conduct in that regard are subject to the control and direction of the State Land Department, to whom all disputes, grievances and other matters pertaining to administration of state lands are to be referred.

2. PUBLIC LANDS — ARIZONA LAND — INSTITUTIONAL GRAZING LAND LEASE.—Applicant for institutional grazing land lease cannot maintain action to compel execution of lease upon Land Commissioner's

refusal to make lease applied for, where before bringing action he did not present, or offer to present, his grievance to State Land Department, the power to make leases being with the department and not the commissioner, and applicant for lease having opportunity to present case to department upon commissioner's refusal to execute lease, under Public Land Code, sections 2, 3.

3. PUBLIC LANDS — ARIZONA LAND — INSTITUTIONAL GRAZING LAND LEASE—DISCRETION OF COMMISSIONER.—Under Public Land Code, sections 2, 3, 8, 9, 30–32 and 37, enacted pursuant to Constitution, article 10, sections 1, 3, and 10, State Land Department or Land Commissioner may, in their discretion, refuse to execute institutional grazing land lease though applicant is the first and only person to apply therefor and has made application in the prescribed form and manner.

4. MANDAMUS — EXECUTION OF PUBLIC LAND LEASE—"PARTY BENEFICIALLY INTERESTED."—Applicant for institutional grazing land lease is not a party beneficially interested within Civil Code of Arizona 1913, paragraph 1554, providing for application for a writ of *mandamus* by a party beneficially interested, since the mere filing of written application for lease of land did not confer upon him any interest in the land other than that of the general public.

5. PUBLIC LANDS—ARIZONA LAND—APPLICANT FOR LEASE—INTEREST IN LAND.—The mere filing of a written application for lease of public lands does not confer upon applicant any interest in the land other than that of the general public.

6. COURTS — DECISIONS — CONSTRUCTION OF STATUTES.—In construing statutes to determine power of Land Department and the status of applicant for lease of public lands, decisions by other states having laws very similar are very persuasive.

APPEAL from a judgment of the Superior Court of the county of Maricopa. F. H. Lyman, Judge. Reversed and remanded with directions to dismiss complaint.

Mr. Wiley E. Jones, Attorney General, and Mr. Geo. W. Harben and Mr. L. B. Whitney, Assistant Attorneys General, for Appellants.

Messrs. Armstrong & Lewis and Mr. O. E. Schupp, for Appellee.

ROSS, J.—This is an action brought by appellee, Caldwell, against appellants, Campbell et al., constituting the State Land Department of Arizona, and W. A. Moeur, State Land

Commissioner, praying that a writ of mandate issue to them commanding them:

"(1) To approve the application of the plaintiff herein for a lease of the lands hereinbefore described; (2) to fix the amount of rental per annum therefor; (3) to notify plaintiff of the amount of annual rental so fixed; (4) upon receipt of said annual rental from plaintiff, to execute a lease to him for said lands for grazing purposes for a term of five years."

The facts set forth in the complaint as a basis for said prayer, and claimed by appellee to make it the duty of the court to require appellants to do the things prayed for, are, so far as material, that the state is now, and was at all times herein, the owner of the herein described institutional lands, to wit: Section 22, township 21 south, range 11 east, G. and S. R. B. and M., in Cochise county, the same being a part of a federal grant to the state under the Enabling Act approved June 20, 1910; that said lands had theretofore been classified and designated as suitable for grazing purposes only, and subject and open to lease for that purpose; that on the eleventh day of September, 1916, appellee, who is in all ways qualified and eligible to lease lands, duly made his application upon a blank form furnished by the State Land Commissioner, and paid one dollar, the filing fee required, for a lease of same for a term of five years; that, although no other application for said land had been made, the Land Commissioner, whose duty it was to approve appellee's application, refused to fix the annual rental, and refused to execute a lease thereof to appellee, without any cause or reason therefor; that said refusal was arbitrary and unreasonable, and not within the power, authority or duty of the commissioner.

An alternative writ of *mandamus* was issued to appellants commanding them to execute the lease as prayed for or show cause on a day fixed.

Appellants interposed defenses by way of motion to quash, plea in abatement, demurrers, general and special, denials, and alleged affirmatively that on January 12, 1917, and before the institution of this suit, the lands were leased by them to one W. A. McBride.

At the trial the facts as alleged in the complaint were stipulated or admitted to be true, except the allegations that "it was the duty of the commissioner to approve plaintiff's application to fix the amount of annual rental; to notify plain-

tiff of the amount of annual rental so fixed, and to execute a lease to plaintiff upon receipt of said annual rental''; and the court, upon such stipulations and the pleadings, entered judgment for appellee, and peremptorily ordered them to do the things prayed for in the complaint, from which judgment this appeal is prosecuted.

The assignments all go to the sufficiency of the complaint and the admitted facts to state a cause of action. It is the contention of appellants that, even though it be conceded that an applicant is the first and only applicant to lease institutional grazing lands theretofore designated to be open to lease, and that he is qualified and has made application upon the form and in the manner prescribed by the State Land Department or State Land Commissioner, and in accordance with the law, still the State Land Department or Land Commissioner may, in their discretion, refuse to accept his application and refuse him the lease. The contention of appellee is, the existence of these facts being conceded, that a plain legal duty devolves upon appellants to grant the lease. In other words, they have no discretion in the matter. It is this question we are to decide.

The Constitution, section 1, article 10, makes the state a trustee of the lands granted to it by the federal government for the several purposes for which such lands are granted. Section 9 of this article authorizes the trustee to sell and lease said lands ''in the manner, and on the conditions, and with the limitations, prescribed by the said Enabling Act and this Constitution, and as may be further prescribed by law''; and section 10 makes it the duty of the legislature to ''provide by proper laws for . . . the lease of such lands for terms not longer than five years. . . . '' It is provided in section 3 of said article 10 that leases for a term of five years or less may be made without publicly advertising the same. In an effort to comply with these mandates, the legislature, at its second special session of 1915, enacted chapter 5, entitled ''An act to provide a code for the systematic administration, care and protection of the state lands and vesting the necessary powers thereof in a department, to be known as the State Land Department, and creating the office of Commissioner of State Lands to carry out the provisions hereof. . . . ''

The personnel of the Land Department and their duties and powers are set forth as follows:

"Sec. 2. *Creation of Department—Commissioner.* There is hereby created a department of state, which shall be known as the State Land Department. Said department shall consist of the Governor, the Secretary of State, the Attorney General, the State Treasurer and the State Auditor, who shall serve without extra compensation. The Governor shall be *ex officio* chairman of the department. Said department shall appoint a State Land Commissioner, who is hereby clothed with the powers of Surveyor General, and shall hold office until his successor shall have been appointed and qualified. Subject to the control and direction of the State Land Department, the commissioner shall have charge of and administer the state lands and shall exercise the powers and perform the duties hereinafter set forth.

"Sec. 3. *Duties and Powers of Department.* The department is hereby authorized to sell and lease all lands owned or held in trust by the state, under such provisions as are hereinafter provided, and under such other rules and regulations, not in conflict with the provisions of this act, as the department may direct; to hold semi-monthly meetings, at which time all disputes, grievances and other matters pertaining to the administration of state lands may be heard by said department; and to perform all of the duties heretofore imposed by law upon the State Land Commission."

The powers of the commissioner are defined by sections 8 and 9, as follows:

"The commissioner, under the direction of the department, shall have charge and control of all lands owned by the state of Arizona, except such as are under the specific use and control of state institutions, with full power to administer the same, and shall have charge and control of the timber, stone, gravel and other products thereof or thereon, subject to the provisions of law. . . .

"The commissioner shall have power to summon witnesses to appear and give testimony, and to compel said witnesses to produce records, books, papers and documents relative to any subject or matter which the commissioner shall have the authority to investigate or determine; to cause the depositions of witnesses residing within or without the state, or absent therefrom, to be taken upon notice to the interested parties, if any, in like manner as depositions of witnesses are taken

in civil actions pending in the superior court, in any matter which the commissioner shall have the authority to investigate or determine. . . . ''

The sections of chapter 5, known as the Public Land Code, bearing upon the leasing of the state lands are as follows:

''Sec. 30. *Application for Lease.* All state lands not otherwise administered shall be subject to lease as in this act provided, but no state lands shall be leased for a longer term than 5 years, and not more than 160 acres of agricultural lands nor more than 640 acres of grazing lands shall be leased to any one person, association or corporation. All applications for lease shall be made on blank forms, to be prepared and furnished by the commissioner, and shall be signed and sworn to by the applicant and filed with the commissioner.

''Sec. 31. *Two or More Applicants.* In case two or more applicants apply to lease the same land, the commissioner shall approve the application of the one who, after investigation or hearing by the commissioner shall appear to have the best right to such lease, but if it should appear that none of the applicants has any rights or equities superior to those of another, the commissioner may, at a stated time, and after due notice to all such applicants, receive sealed bids submitted in accordance with such rules and regulations as the commissioner may adopt, and shall approve the application of the bidder, who, in all respects, is eligible to hold a lease upon the land, and will pay the highest annual rental therefor; provided, that the commissioner shall have the right to reject all the bids submitted.

''Sec. 32. *Minimum Rental.* No lease shall be executed for a consideration less than $10.00 per year, except that when a lease is made for a tract of land of five acres or less, then in that event for not less than $2.50 per year, nor for an annual rental of less than three cents per acre on grazing lands and not less than two and one-half per cent. of the commissioner's estimate of the value of agricultural lands; said rental shall be paid in advance, annually or for such other period not exceeding two years as the commissioner may fix.''

While, under these provisions, it is manifest that the immediate negotiations for the leasing of lands were intended to be carried on by the commissioner, it seems quite clear that his acts and conduct in that regard are ''subject to the control and direction of the State Land Department,'' composed of

the Governor and other state officers named, and, while his acts might be efficacious where no "disputes, grievances or other matters pertaining to" a given contract of lease arise, when such do intervene it appears action by the department as such is contemplated. By section 3, *supra,* it is made the duty of the department to lease all lands owned or held in trust by the state, and "to hold semi-monthly meetings, at which time all disputes, grievances and other matters pertaining to the administration of state lands may be heard by said department."

The appellee's complaint fails to show that his grievance or dispute was ever presented to the department for action, or that the department as such ever refused to give him a lease. We think, aside from any other question, before an applicant for a lease may maintain this kind of action, he should be required to present, or offer to present, his grievance to the department for action. Until that is done, he cannot, nor can the court, know what the action of the department might be. Had he adopted the remedy of appealing to the department, he might have satisfied the members thereof that he was entitled to a contract of lease. We think, at all events, that it was the intention of the legislature to give to an aggrieved applicant to purchase or lease lands an opportunity to appear before, and submit his case to, the department as such, and it would also seem, as a corollary to that, that he must do so before he can invoke the aid of the court to compel the department to act. The power to make leases lies with the department and not the commissioner (sections 2 and 3). This duty or power is again stated in section 38, wherein it is provided that "the department is hereby authorized to execute leases and contracts for the lease of lands containing" precious and valuable minerals and valuable natural deposits. The appellee, in making the department and the members thereof defendants in his action, concedes as much, and exposes the weakness of his position in failing to invoke their power to review his grievance against or dispute with the commissioner before asking the court to compel action.

But, granting the whole power of negotiating and making leases is vested in the commissioner under sections 30, 31 and 32, and that a disappointed applicant may treat his refusal to grant a lease as final, and as relieving him from appealing

to the department for redress, what is his status before the law?

It is provided that, when the land is wanted or applied for by two or more, bids shall be taken and the land awarded to the one in all respects eligible who will pay the highest annual rental; but the highest eligible bidder is not entitled as a matter of right to the lease of the land, for, even in such circumstances, "the commissioner shall have the right to reject all bids submitted." As between the bidders, if the land is to be leased to any one of them, it shall be to the one making the highest offer, if qualified. The commissioner may reject the highest bidder, and in doing so all other bids are disapproved, for, if he approves of any, it must be the highest. Now, if he may reject the highest bid—if that power without restriction or limitation except as indicated is vested in him—he would hardly presume the legislature intended to say he could not exercise the same power upon a formal application or proposal to rent as in this case. There is no legislative expression making it his mandatory duty to accept the applicant's offer to lease in the absence of competition. It will be conceded that one who has occupied the lands of the state as lessee ordinarily would have a better right and a more equitable claim for a renewal of his lease than an original applicant for a piece of land would have to a lease thereof. Yet the legislature in section 37 of the Land Code states "that if the commissioner does not deem the continued leasing of said land to be for the best interest of the state, said lease shall not be renewed." We are forced to the conclusion that the law does not specially enjoin upon the State Land Commissioner by virtue of his office the duty of accepting an applicant's proposal to lease institutional or state lands under the state of facts here, but, on the contrary, we think it was intended that he should be permitted to exercise his discretion in the matter, and either refuse or accept the proposal, as in his judgment would best subserve the interests of the state; and to that end the commissioner was given the power in section 9, *supra*, "to investigate and determine" what should be done, not only on applications to lease, but any other "subject or matter" brought before him.

The application for a writ of *mandamus* under the statute, paragraph 1554, Civil Code of 1913, must be made by "the party beneficially interested." The question is, Is appellee

such a party? It is but natural, as well as compatible with a fair sense of justice, to assume that the Land Department will recognize, so far as reasonable and practicable, that "the first in time shall be first in right" in awarding leases of the state or institutional lands, but there is nothing in the law requiring it. If two or more persons apply for a piece of land, it is not the first in time that is entitled to it, but the one who will pay the highest rental value for it. If there is but one proposal to rent, the rental value must be fixed by the Land Department or commissioner, and cannot be less than three cents per acre, with no limit upon the maximum that may be fixed. Section 32, *supra.* There could be no mutual obligation as long as the rental value was left unsettled. If the Land Department or commissioner becomes bound upon an application being filed, then the applicant is also bound to pay the rental value fixed, whatever it may be. That is not the law. Neither the state nor the applicant in such circumstances is bound. If, after the rental value is fixed, the applicant is dissatisfied, he may refuse to accept the lease notwithstanding his application. He acquires no interest in the land susceptible of enforcement until there is a mutual obligation.

"The mere filing of a written application for a lease of public lands does not confer upon the applicant any interest in the land other than that of the general public." *State* v. *Ross,* 39 Wash. 399, 81 Pac. 865; *Whiteman* v. *Severance,* 46 Minn. 495, 49 N. W. 255; *State ex rel. Marsh* v. *State Board Land Commissioners,* 7 Wyo. 478, 53 Pac. 292.

The appellee contends that the decisions in these cases are not in point for the reason the statute laws in these states are very different from ours. That may be true in some respects, but, as to the discretionary powers of the Land Departments and the status of an applicant to lease lands, the laws are very similar to ours, and for that reason we consider these decisions in point and very persuasive.

Appellee cites a number of cases of lieu land selections, homestead and pre-emption applications, and the like, wherein the courts have held, under the peculiar statutes granting rights thereunder, "the first in time is the first in right"; but, as we have seen, our legislature did not adopt that rule in providing for the lease of our state lands, and it follows

XX Ariz.—25

that those decisions are no authority of control in construing our Land Code.

It follows that the trial court committed error in directing a peremptory writ of *mandamus* to issue against the appellants, and the judgment is therefore reversed and cause remanded, with directions that appellee's complaint be dismissed.

CUNNINGHAM, C. J., and BAKER, J., concur.