## HENDERSON et al. v. MIDWEST REFINING CO.

### No. 186.

Circuit Court of Appeals, Tenth Circuit.

Aug. 7, 1930.

W. L. Walls, of Cheyenne, Wyo. (R. S. Mentzer, of Cheyenne, Wyo., and John T. Bottom, of Denver, Colo., on the brief), for appellants.

John W. Lacey, of Cheyenne, Wyo. (Herbert V. Lacey, of Cheyenne, Wyo., A. K. Barnes, of Denver, Colo., and A. C. Campbell, of Cheyenne, Wyo., on the brief), for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

LEWIS, Circuit Judge.

Henderson and Bon instituted their suit in the state court of Wyoming on March 1, 1927. Appellee demurred to the petition on April 2, 1927, and the demurrer was sustained October 15, 1928. Plaintiffs were given twenty days in which to amend and appellee twenty days thereafter in which to plead. Henderson and Bon filed their amended petition in said court on October 24, 1928, and on November 9, 1928, appellee, a foreign corporation, removed the case to the federal court. The plaintiffs moved to remand on December 19, 1928. The appellee filed in the federal court its demurrer to the amended petition on December 22, 1928. The motion to remand was overruled on January 23, 1929. The court below sustained the demurrer of appellee to the amended petition on August 9, 1929. Henderson and Bon appealed, assigning error on the action of the court in overruling their motion to remand the case to the state court and in sustaining appellee's

demurrer to the amended petition. Since the appeal Bon has died and Evalyn G. Bon, his executrix, has been substituted and the case revived.

The District Judge in ruling on the motion to remand expressed the opinion that the amended petition stated a new cause of action which, in effect, was the institution of a new suit, and appellee having filed its petition to remove the cause to the federal court within the time allowed by the court to plead to the amended petition, appellee's motion was made within the time given by statute. 28 USCA § 72. That is the question argued here—whether the amended petition stated an entirely new cause of action from that stated in the original petition.

The controversy relates to two oil leases, each given by the Wyoming State Board of School Land Commissioners on school lands, one to H. S. Ridgely and one to Greybull Refining Co., and each lease bearing date May 24, 1916. Each lease covered 80 acres and was applied for on the date it was issued. Ridgely assigned his lease to the Greybull company and the latter assigned both leases to appellee. The original petition further alleged that the two original lessees were the agents of appellee and the two leases were given in their names for its use and benefit. Henderson had made application for an oil lease on this land on May 20, 1914, and it is alleged that no other applications were made until March 8, 1915. The Wyoming statute requires that all applications for such leases shall be filed with the secretary of the board of commissioners. It is alleged that the application of Henderson was the first to be made, that said application was filed with the secretary of the board and no action was ever taken thereon, that being the first applicant Henderson had the first right and was entitled to a lease, but that appellee obtained oil leases on the land in fraud of the rights of Henderson and in violation of his preference right thereto, and in violation of his preference right to a renewal at the end of five years had a lease been given to him rather than to appellee, that the leases given to appellee were for periods of five years and on their expiration May 24, 1921, they were renewed in favor of appellee, who entered upon the tracts and has since produced oil of great value from each to its own profit, that by the acts aforesaid perpetrated by appellee and those co-operating with it in the premises, Henderson and Bon, to whom Henderson had assigned an interest, were damaged on account of said acts and the production of oil from said premises prior to and up to May 24, 1921, in the sum of $2,000,000, and as to the production from said tracts subsequent to May 24, 1921, they asked for an accounting against appellee for the oil so produced. They prayed judgment for damages in the sum of $2,000,000, and that on accounting they have judgment for subsequent production as may seem to be fair, just and equitable and that they have all other proper and equitable relief.

This was clearly a suit in equity based on the principle that where a plaintiff has a clear right in equity to property and one with knowledge of such right obtains the legal title thereto, the plaintiff may in equity obtain a decree against him to the effect that he took and thereafter held the property as trustee for plaintiff. In Stark v. Starrs, 6 Wall. 402, 419, 18 L. Ed. 925, the court said the doctrine is well established "that where one party has acquired the legal title to property to which another has the better right, a court of equity will convert him into a trustee of the true owner, and compel him to convey the legal title." See, also, Howe v. Parker (C. C. A.) 190 F. 738, 746 and 747. There seems to be no other basis in the original petition for the relief sought.

The amended petition, after stating in substance the facts that have been stated, then proceeds to allege a conspiracy between appellee Refining company, its agents, Ridgely and Greybull Refining Company, the members of the Board of School Land Commissioners, its secretary and others, to defraud Henderson and Bon out of their rights to a lease on the land, that in furtherance of said conspiracy the board made no disposition of the application of Henderson, that a special meeting of the board was held at which the leases were given to Ridgely and the Greybull company, appellee's agents, and no notice was given to plaintiffs of said meeting, that in furtherance of said conspiracy, other named persons who were parties thereto, some of whom had made applications for leases on the land, were later given substantial compensation by appellee for their claimed rights, that although Henderson and Bon inquired about Henderson's application from time to time at the office of the board they were not informed and did not know until November, 1925, that leases had been given in the manner stated. It is alleged that all of the acts of the said conspirators were done and performed for the purpose of defrauding plaintiffs of their rights to a lease and did defraud them of said rights, whereby they were damaged in the sum of $10,000,000, for which they prayed judgment.

Taking the allegations of the amended petition as sufficient for the purpose, it clearly states an action at law ex delicto for damages resulting from execution of the alleged fraudulent conspiracy. It is not an amplification of the alleged cause of action as it was stated in the first petition; but a change, both from fact to fact and from law to law—an abandonment of the original for a new cause of action. The subject of departure in pleading is elucidated in Union Pacific Ry. Co. v. Wyler, 158 U. S. 285, 15 S. Ct. 877, 39 L. Ed. 983. That was an action at law. In Galesburg & Kewanee Elec. Ry. Co. v. Hart, 221 F. 7, 12, the principle of departure is regarded as of equal application in an equity suit. In that case the Court of Appeals for the Seventh Circuit said: "Between stating a new cause of action and amending the details of the original cause of action, the difference is vital and is clearly illustrated by the leading cases. Departures occur either where the pleader deserts, in point of fact, the ground that he had first taken, or where he puts the same facts on a new ground in point of law"; and this is so although both pleadings may be based on the same transaction. Clearly, appellee in demurring to the original petition and obtaining a favorable ruling of the court thereon, lost its right to removal of that cause of action to the federal court. But when the plaintiffs filed their amended petition stating a new and different cause of action, appellee's right to remove that case could not and did not arise until the amended petition was filed, and its application for removal of that cause was, on the facts stated, filed within the time required by the removal section. Mecke v. Valley Town Mineral Co. (C. C.) 89 F. 209; Evans v. Dillingham (C. C.) 43 F. 177. Defendant apparently was content to remain in the state court on the cause of action stated in the original petition, but that seems to be no reason for denying to it its right of removal of an entirely new and different cause of action pleaded in the so-called amended petition. Moreover, the time within which removal may be made is not jurisdictional, but "modal and formal." Ayers v. Watson, 113 U. S. 594, 5 S. Ct. 641, 28 L. Ed. 1093; Powers v. C. & O. Ry., 169 U. S. 92, 18 S. Ct. 264, 42 L. Ed. 673.

It is also assigned as error that the court below sustained a demurrer to the amended petition. That petition is bottomed upon the claim that Henderson, being the first applicant for a lease, had in law a preference right thereto, a vested right, it is argued—a property right to the lease of which the conspir-

ators unlawfully deprived him and Bon. To sustain this claim counsel for appellants rely on section 13 of article 7 of the Wyoming Constitution and statutes in aid of its purpose. Said section 13, so far as applicable here, reads:

"The governor, secretary of state, state treasurer and superintendent of public instruction shall constitute a board of land commissioners, which, under direction of the legislature, as limited by this constitution, shall have direction, control, leasing and disposal of the lands of the state granted, or which may be hereafter granted for the support and benefit of public schools * * *."

The Legislature created the office of Commissioner of Public Lands and prescribed his duties, which will be presently noted. It designated the board created by said section 13 of article 7 of the Constitution as "The State Board of School Land Commissioners," and it gave that board authority to lease school lands. There is another board of land commissioners, with whose powers and duties we are not now concerned. During all times here material there was this statute:

"The state boards of land commissioners are hereby authorized to lease, upon a royalty basis, any state or school lands supposed to contain coal, oil or minerals, and to make and establish rules and regulations covering the conduct of development and mining operations to be carried on thereunder."

This is now section 716, Wyoming Compiled Statutes 1920. At the time Henderson filed his application for lease the statute provided that the royalty to be fixed by the board should "in no case exceed 10 per cent. of the gross output of mineral or oil produced from said lands under said lease" (Comp. St. Wyo. 1910, § 620); but the statute was changed so as to provide at the time Ridgely and the Greybull company made their applications for leases, that the royalties should "not be less than 5% of the gross output of mineral or oil from said lands under said lease." Section 717 Wyoming Compiled Statutes 1920. It thus appears that when Henderson made his application there was a limitation on the maximum royalty that could be exacted, while the limitation was on the minimum when Ridgely and the Greybull company made their applications. This change as to royalty is not referred to in the amended petition, nor is there anything said as to the amount of royalty required in the leases given to Ridgely and the Greybull company—whether 10%, or more or less, of the gross output.

The statute makes the Commissioner of Public Lands secretary of both boards, the

keeper of their records and seals, and requires him to "perform such other duties concerning the business transactions of said boards as they may direct. He shall receive all applications for purchasing, leasing, entering, locating or in any manner acquiring title to, interest in, or any benefit from or use of any lands belonging to or under the control of the state of Wyoming, and he shall allow or disallow subject to the approval of the state board of land commissioners, such applications to purchase, lease, enter or otherwise acquire title to, interest in, benefit from, or use of said lands, or the appurtenances thereof, and in all cases where there have been no conflicting applications he shall on or before the first day of each calendar month, report his decisions to the proper state board for its approval and for the signature of the governor as president of said board, but in all cases where there shall have been conflicting applications to purchase or otherwise acquire interests or benefits in said lands, he shall before reporting his decision to the said board, give each of said applicants at least thirty days' notice of the time of his decision with reference to their said applications, and the date upon which his said decision will be reported to the said board for its approval." Comp. St. Wyo. 1910, § 226. The District Judge found that the board adopted no rules and regulations, as the statute authorized it to do, in discharge of its duties, until 1919. Appellee's counsel assert in their brief that no rules and regulations were adopted by the board until June 4, 1919, and they set out those rules and regulations. Appellants' counsel assert in their brief that the board had prescribed rules and regulations long prior to May, 1914, when Henderson made his application, and that those rules and regulations were then in force and effect, but he does not tell us what those rules and regulations were, nor how it happened that the board, as found by the court, and as now insisted by counsel for appellee, adopted rules and regulations on June 4, 1919, for the first time. We therefore reject appellants' contention in that respect. Counsel for appellants appear to rely for their contention that Henderson had a preference right on that section of the state statute which prescribes the duties of the Commissioner of Public Lands. They say in their brief: "The Commissioner of Public Lands was by law bound to pass on Henderson's application and allow or disallow it. * * * When there is but one applicant who has complied with the laws of the state, and the rules and regulations prescribed by the particular land board, the only time when there is any discretion left in the Commissioner of Public Lands is when there are two or more applicants for the same land." If by the assertion just quoted counsel mean to say that because Henderson was the first applicant for a lease on May 20, 1914, and there were no other applicants until March 8, 1915, Henderson had absolute right to lease and the law compelled the Commissioner of Public Lands to finally allow or disallow his application, without any action by the board, we must reject that contention as wholly unsound. It cannot be sustained, if the constitutional and statutory provisions are to be given any effect. The Constitution expressly vests power to lease the lands in the board, and the statute provides that the action of the commissioner shall be subject to the approval of the board. Obviously, no preference right to the first applicant can be found in either Constitution or statute; and the Supreme Court of Wyoming, in construing this statute in State ex rel. Marsh v. Board, 7 Wyo. 478, 53 P. 292, 296, said:

"Again, we have searched the statute in vain to discover the recognition of any preferred rights in one situated as the relator to lease school lands. * * * There is no express recognition of a superiority of right in prior applications."

The Supreme Court of Arizona, in construing the powers of a state board to lease grazing lands of that state, where the first applicant insisted that he was entitled to the lease, said in Campbell v. Caldwell, 20 Ariz. 377, 181 P. 181, 184:

"It is but natural, as well as compatible with a fair sense of justice, to assume that the Land Department will recognize, so far as reasonable and practicable, that 'the first in time shall be first in right' in awarding leases of the state or institutional lands, but there is nothing in the law requiring it."

In Whiteman v. Severance, 46 Minn. 495, 49 N. W. 255, the Supreme Court of Minnesota had under consideration a statute entitled: "An act to regulate the sale and lease of mineral and other lands belonging to the state of Minnesota." Laws Minn. 1889, c. 22. The plaintiff there contended that his application for a lease on mineral lands was the first in order after the law took effect, and that because thereof he had precedence in and right to the lease, and thereby secured a vested right to the lease applied for, which right the commissioners had no power to ignore. The court rejected the contention and said:

"To succeed, the plaintiff should have possessed such equities as would control the legal title to the leases and contracts while they were in the defendant's hands. From what has been heretofore said, it is manifest that mere priority of filing an application, assuming that the plaintiff filed first, gave him no vested rights, so as to enable him to maintain this action."

Of course, the plaintiffs could suffer no damage unless they had some property right of some character in the lands or to a lease thereon that could be violated and·injured by the alleged acts of the conspirators. To establish that right the amended petition goes on the theory that the statute prescribing the duties of the Commissioner of Public Lands divested the board of all power and discretion, made it the compulsory duty of the Commissioner of Public Lands to allow Henderson's application and the compulsory duty of the board to approve the action of the commissioner, because Henderson, being the first applicant, obtained a preference right, a vested property right, which entitled him as matter of law to a lease. The powers and duties of the Wyoming Board of School Land Commissioners in the disposition of the state's school land are not substantially different from those conferred on United States Land Office officials in the disposition of the public domain. In Campbell v. Weyerhaeuser (C. C. A.) 161 F. 332, 333, it appeared that Campbell had repeatedly filed with the Land Department his applications to enter a certain tract under the Timber and Stone Act. His applications were rejected, and after title had passed to Weyerhaeuser, he by bill in equity sought to hold Weyerhaeuser as his trustee. After holding that Campbell's right to buy the land was never recognized by the United States, and he was never in privity with it, the court, speaking through Sanborn, Circuit Judge, said:

"The right under the general land laws of every qualified citizen to enter any tract of land open to entry thereunder is not, and no one can convert it into, such an interest in land by making an application to purchase which the officers of the Land Department unlawfully deny."

In Smelting Co. v. Kemp, 104 U. S. 636, 647, 26 L. Ed. 875, the action was ejectment for land patented to another. The court said:

"If in issuing a patent its officers took mistaken views of the law or drew erroneous conclusions from the evidence, or acted from imperfect views of their duty, or even from corrupt motives, a court of law can afford no remedy to a party alleging that he is thereby aggrieved."

This, because the action of the special tribunal to which the subject-matter is fully delegated is, like the judgment of a court, not subject to collateral attack. Steel v. Smelting Co., 106 U. S. 447, 453, 1 S. Ct. 389, 27 L. Ed. 226; Chever v. Horner, 11 Colo. 68, 72, 17 P. 495, 7 Am. St. Rep. 217. The errors assigned are without merit.

Judgment affirmed.