[Civil No. 3696.   Filed September 28, 1936.]

[61 Pac. (2d) 163.]

B. B. MOEUR, JAMES H. KERBY, JOHN L. SULLIVAN, MIT SIMMS, ANA FROHMILLER, Constituting the State Land Department of the State of Arizona, and CHARLES P. MULLEN, State Land Commissioner, Appellants, v. CHIRICAHUA RANCHES COMPANY, a Corporation, Appellee.

Mr. John L. Sullivan, Attorney General, and Mr. Elmer C. Coker, Assistant Attorney General, for Appellants.

Mr. D. B. Morgan, for Appellee.

McALISTER, J.—This is an appeal by B. B. Moeur, James H. Kerby, John L. Sullivan, Mit Simms and Ana Frohmiller, composing the state land department of Arizona, and Charles P. Mullen,

state land commissioner, from a judgment granting a writ of prohibition directing them to refrain from canceling certain state land leases which the department had theretofore issued to the Chiricahua Ranches Company and from awarding leases covering the same lands to other persons.

There is no dispute as to the facts. It is admitted that they are correctly alleged in the petition for the writ and, so far as necessary to a proper disposition of the appeal, are as follows: On October 18, 1929, the state land department issued to Roy Gill, for a term of five years from October 31, 1929, three leases on state lands, covering separate tracts, each situated in different sections of the same township in Pima county (22 south, range 9 east, Gila and Salt River meridian), and on August 24, 1932, with the consent of the state land commissioner, these leases were assigned to the Chiricahua Ranches Company. On September 21, 1934, and within "not less than thirty nor more than sixty days prior to the expiration of the lease," as required by section 2972, Revised Code of 1928, that company filed its application for renewals.

A few days prior thereto, however, Gabriel B. Garcia, Damasio B. Garcia and Pedro B. Garcia had filed applications, each asking for a lease on one of the three tracts, and on January 9, 1935, after investigation and a hearing, the state land commissioner approved the application of the Chiricahua Ranches Company and immediately advised the three Garcias of its action and of their right, under section 2966, Revised Code of 1928, to appeal within twenty days to the state land department. Upon expiration of this period, no appeal having been filed, leases covering the three tracts were executed by the state land department, through its duly authorized officers,

and by the Chiricahua Ranches Company, lessee, for a period of five years from November 1, 1934, and upon the company's payment in advance of one year's reappraised rental charge for them the leases were issued and were thereafter in full force and effect.

After the twenty-day period for appeal had gone by and the leases had been issued, the Garcias forwarded notices of appeal by mail to the state land commissioner, who, a few days thereafter, advised them that since the appeals had not been filed in time they could not be considered, the department having lost jurisdiction, and that leases to other persons covering the same lands had already been issued and were then outstanding.

Shortly thereafter a new state land commissioner was appointed and he notified the petitioner and the Garcias that the appeals previously filed had been presented to the department and a hearing on them would be held by the department on June 24, 1935. The plaintiff made a special appearance to object to the department's jurisdiction over the subject matter and moved that the appeals be dismissed for the reason that its leases had been duly executed and delivered and were then outstanding, completed, valid contracts that could be canceled, if at all, only by complying with the procedure authorized by section 2971, Revised Code of 1928, relating to cancellation of leases obtained through fraud. The department did not grant the motions, but heard the appeals on their merits, the plaintiff taking no part in the proceeding, and after the introduction of evidence by the Garcias adopted unanimously a motion awarding the leases to them. The next day the commissioner notified the plaintiff that its three leases were to be canceled and ordered it to return the originals to the

department for cancellation. The plaintiff refused and, on July 9th thereafter, filed a petition for an alternative writ of prohibition, setting forth the foregoing facts and asking that the defendants be restrained from canceling its leases and entering into others with the Garcias covering the same land, and the court ordered it issued.

The defendants demurred to the petition both generally and specially, and moved to quash the writ, the basis of both pleadings being that the state land department had exclusive and complete jurisdiction of the subject matter of the action at all times after the filing of the applications for leases, and that the provisions of section 2966, Revised Code of 1928, prescribing the time for taking an appeal, have no application to an appeal from the state land commissioner to the state land department.

The court overruled the demurrers, denied the motion to quash and, after the defendants announced they would stand on their pleadings, ordered that the alternative writ of prohibition be made absolute. The defendants, being dissatisfied with this disposition of the case, have brought it here for review.

Appellants make two assignments, each of which gives a different reason why the action of the court in overruling the demurrers, denying the motion to quash, and making the alternative writ of prohibition absolute, was erroneous. Both are based on the construction the trial court placed on the section of the state Land Code providing for appeals, section 2966, *supra,* which became a part of the statutes in its present form as a result of the codification of the laws pursuant to chapter 35, Session Laws 1925. The original Land Code, consisting of one hundred twenty sections, was enacted in June, 1915, and appears in the acts of the Second Special Session of

that year as chapter 5. As then adopted it contained no provision for an appeal from a decision of the commissioner to the land department or from a decision of the department to the courts, but the Fourth Legislature supplied this omission by making sections 3 and 4 of chapter 166, Session Laws of 1919, reading as follows, a part of the Land Code:

"Section 3. Any applicant to lease State land, may appeal from any decision of the commissioner of the state land department and from the state land department to the Superior Court of the county in which the land is situated, where said decision is adverse to said applicant in regard to the leasing of the land or any part thereof, described in said applicant's application.

"Section 4. The party appealing, his agent or attorney, shall give notice thereof in writing to said commissioner or land department from whose decision the appeal is being taken and to the adverse applicants to lease the land referred to in said decision within twenty (20) days from the date of the rendition thereof."

These two sections remained in this form until they were restated and carried into the Revised Code of 1928 as section 2966, which reads as follows:

"§ 2966. Appeal by applicant; notice. An applicant to lease state land may appeal from a decision of the commissioner to the department, and from the department to the superior court of the county in which the land is situated. The party appealing shall give notice thereof in writing to the commissioner or department from whose decision the appeal is taken and to the adverse applicant, within twenty days from the rendition of the decision. Thereafter such proceedings shall be had in the superior court as on appeal from an appraisement."

The first reason appellants assign to sustain their position that the rulings complained of were erroneous is that in reaching that conclusion the court held

that section 2966 repealed sections 3 and 4, in that it provided for an appeal from the commissioner to the department and required that it be taken within twenty days from the rendition of the decision. This construction was not, appellants claim, justified in view of the last sentence of section 2966 stating that "Thereafter such proceedings shall be had in the superior court as on an appeal from an appraisement," since this language can only mean that the legislature intended that the twenty-day provision should apply to an appeal from the department to the courts and not to. an appeal from the commissioner to the department. But if, notwithstanding this, the court was correct in applying the twenty-day provision to such an appeal, they say it was possible to do so only because a change in the existing law (sections 3 and 4, *supra*) was made when those sections were combined into section 2966, and since this was wholly unauthorized by the act providing for codification, the legislature did not, in adopting the Code as revised, adopt section 2966 with this construction.

As further evidence that such was not the purpose of the legislature, appellants call attention to the fact that at the time it adopted section 2966 it adopted also, as a part of the same chapter (chapter 71, Revised Code of 1928), section 2947, which, after creating the state land department, stating who shall compose it and directing the department to appoint a state land commissioner, concluded with this specific provision:

"The department may sell and lease all lands owned or held in trust by the state, as hereinafter provided, and hold semimonthly meetings, at which time all disputes, grievances and other matters pertaining to the administration of state lands may be heard."

If no conflict existed between sections 2947 and 2966 as they were incorporated in the Revised Code of 1928, it is suggested still further that the next legislature, the ninth, before that Code became effective on July 1, 1929, amended that portion of section 2947 just quoted in such a way as to show that its intention was that the department should at all times have supervisory control over the commissioner and that the time provision of section 2966 should have no application to an appeal from the commissioner to the department. As amended in section 1, chapter 52, Session Laws of 1929, it reads:

"The department may sell and lease all lands owned or held in trust by the state as hereafter provided, and shall hold monthly meetings at which time all disputes, grievances and other matters pertaining to the administration of state lands, may be heard."

The first question we consider is whether the Code Commissioner in restating sections 3 and 4 as section 2966 changed their meaning in such a way as to provide for the first time for an appeal from the decision of the commissioner to the department, to be taken within twenty days from its rendition, and whether the legislature by adopting it did in effect repeal those sections. The claim that the Code Commissioner did this is based on the fact that the following language, in section 3, "any applicant to lease state land, may appeal from any decision of the commissioner *of* the state land department and from the state land department to the Superior Court," was carried by him into section 2966 in this form:

"An applicant to lease state land may appeal from a decision of the commissioner *to* the depart-

ment, and from the department to the superior court.''

The only material difference in the two expressions, it will be observed, is that the preposition ''to'' has been substituted in section 2966 for the preposition ''of'' after the term ''commissioner'' in section 3, and appellants insist that the effect of this was to provide for something that did not theretofore exist, namely, an appeal from the decision of the commissioner to the state land department, to be taken within twenty days, the only right of appeal existing prior thereto being one from the commissioner and the department or from the department alone to the courts. Whether this substitution changed the existing law and repealed sections 3 and 4, or whether it merely reduced in language and removed an inconsistency depends wholly upon the meaning the legislature intended the quoted portion of section 3 to convey; and to ascertain this it is necessary to keep in mind the following excerpts from sections 1 and 2 of chapter 166, Laws of 1919, which were merely reenactments of portions of sections 30 and 31 of the original Land Code:

''Application for Lease. . . . All applications for lease shall be made on blank forms to be prepared and furnished by the Commissioner and shall be signed and sworn to by the applicant and filed with the Commissioner at the State Land Office.'' (Section 1.)

''Two or More Applicants. In case two or more applicants apply to lease the same land, the Commissioner shall approve the application of the one who, after investigation or hearing by the Commissioner, shall appear to have the best right to such lease, . . . but if it should appear that none of the applicants has any right or equities superior to those of another, the Commissioner may, at a stated

time, and after due notice to all such applicants, receive sealed bids submitted in accordance with such rules and regulations as the Commissioner may adopt, and shall approve the application of the bidder, who in all respects, is eligible to hold a lease upon the land, and will pay the highest annual rental therefor; provided, that the Commissioner shall have the right to reject all the bids submitted." (Section 2.)

It will be observed that these sections provided that all applications for a lease must be filed with the commissioner and that it was his duty, when two or more persons applied for a lease to the same land, to investigate or have a hearing and then approve the application of the one who should appear to have the best right to the lease.

The next section (3) made, for the first time, definite provision for the right of appeal "from any decision of the commissioner of the state land department and from the state land department to the Superior Court," but the succeeding section (4) provided that the party appealing "shall give notice thereof in writing to said commissioner or land department from whose decision the appeal is being taken"; in other words, required him, when appealing from a decision of the commissioner, to give notice thereof to the commissioner, and when appealing from a decision of the land department, to give notice to the land department, showing clearly that it was the intention that an appeal should lie from the decision of the one who made it, whether the commissioner or the department. The expression "from whose decision the appeal is being taken" qualifies the word "commissioner" as fully and completely as it does the term "department," and conveys the meaning it would if it had appeared after each of them.

It is plain from a reading of the four sections of chapter 166 that the duty to decide in the first instance which of two or more applications for a lease shall be approved was still imposed upon the commissioner, and that an applicant dissatisfied with his decision could appeal from it, but the language of section 3 conferring that right is such that it is not clear whether the appeal should have been to the department or the courts. If, however, it be kept in mind that sections 2 and 3 of the original Land Code (Laws 1915, 2d Sp. Sess., chap. 5) gave the department full and complete supervision over the acts of the commissioner and authorized it to hold semi-monthly meetings for the purpose of hearing disputes, grievances and other matters pertaining to the administration of state lands, and that nowhere in that Code was there a specific provision for appeals, the thought immediately suggests itself that one of the purposes of section 3 was to make definite provision for appeals from the decision of the commissioner to the department in order that it might have an opportunity to approve, modify or reverse what he did. In fact it was held in *Campbell* v. *Caldwell*, 20 Ariz. 377, 181 Pac. 181, 183, under the Land Code in its original form, that before an applicant for a lease of state land may maintain an action to compel the execution of a lease after the commissioner has refused to do so "he should be required to present, or offer to present, his grievance to the department for action. Until that is done, he cannot, nor can the court, know what the action of the department might be. Had he adopted the remedy of appealing to the department, he might have satisfied the members thereof that he was entitled to a contract of lease. We think, at all events, that it was the intention of

the legislature to give an aggrieved applicant to purchase or lease lands an opportunity to appear before, and submit his case to, the department as such; and it would also seem, as a corollary to that, that he must do so before he can invoke the aid of the court to compel the department to act.''

This statement, though made two months after chapter 166 was enacted, was not based on that act because the facts of the Caldwell case occurred prior to its passage, but it expresses what the court felt the legislature intended in the original Land Code relative to the right of an aggrieved applicant to lease state land to submit his case to the department, and we are of the view that there was no purpose whatever on the part of the members of the Fourth Legislature to change this by the language of section 3 of chapter 166, but, rather, that the intention was to grant an appeal from the decision of the commissioner *to* the department, as well as from the department to the courts, and, therefore, that the preposition ''of'' after the word ''commissioner'' was used inadvertently and through mistake, instead of the preposition ''to.''

If any doubt as to the correctness of this view existed it would seem to be dispelled by these considerations: Section 1 of the original Land Code provided that the term '' 'the commissioner' '' shall mean ''the state land commissioner of the State of Arizona''; section 2 directed the department to appoint a ''State Land Commissioner''; and throughout the entire Land Code the commissioner is referred to as *the commissioner,* the phrase, ''of the state land department,'' after that term, appearing nowhere else therein, and no reason whatever exists why it should have been used in this instance to describe that officer any more than in

others. It did not designate him any more definitely and was wholly useless if employed for that purpose, but when the word "to" is substituted for the word "of," and the phrase, "*of* the state land department," made to read "*to* the state land department," its meaning becomes plain and renders the entire section clear, workable, and in line with sections 2 and 4, chapter 166, and the original Land Code as construed in *Campbell* v. *Caldwell, supra.*

This view is further strengthened by the suggestion that if the purpose of section 3 (chapter 166, Laws 1919) was to authorize an appeal from a decision of the commissioner to the courts, as well as from a decision of the land department to the courts, it is difficult to understand why the legislature did not use the disjunctive "or" instead of the conjunctive "and," as it did in section 4 when providing that notices of appeal should be given to the commissioner *or* land department, whichever decided the matter. The commissioner and the land department make separate, not joint, decisions, hence the intention could not have been that an appeal to the courts from the decision of both could be taken in the same case; and if the purpose was to give the right of appeal to the courts from the decision of either, the use of the conjunctive "and" instead of the disjunctive "or" contradicts it. But, when the word "of" is replaced by the word "to," it becomes plain that "and" was properly used and that is connects the expressions, "any applicant . . . may appeal from any decision of the commissioner to the state land department," and "(any applicant . . . may appeal) from the state land department to the Superior Courts."

Inasmuch, therefore, as we are satisfied that the word "of" was inadvertently and uninten-

tionally used for the word "to," and that the right of appeal from the commissioner to the department, to be taken within twenty days, was specifically given, the other propositions advanced to sustain the contrary view are without merit. One of these is that, because the last sentence of section 2966 states that "Thereafter such proceedings shall be had in the superior court as on an appeal from an appraisement," the twenty-day provision applies only to appeals to the courts. This, at first thought, might seem plausible but in view of the fact that in the sentence immediately preceding this language the legislature had specifically and definitely authorized appeals from the decision of the commissioner to the department, as well as from the department to the courts, each to be taken within twenty days, it is unreasonable to presume that in using this sentence it intended to nullify and set aside this right.

Another ground urged is that section 2947, giving the department supervisory control over the commissioner and authorizing it to meet semi-monthly to hear disputes and grievances, was adopted at the same time and as a part of the same chapter as section 2966 (chapter 71, Revised Code of 1928), and this being true the legislature could not have intended to shackle and curb the department in the performance of these duties by depriving it of the power to hear disputes and grievances in those cases in which the party aggrieved by the decision of the commissioner fails to appeal therefrom to it within twenty days. In requiring that notice of such appeals be given within this period, the purpose was not to interfere with the department's jurisdiction to review the decision of the commissioner in any case, but, rather, to set up an orderly procedure by which it

could be exercised in all cases. Providing that notice of such appeals must be given within twenty days does not limit the department's supervisory control over the acts of the commissioner, any more than the requirement that appeals from a judgment of a trial to an appellate court must be taken within a prescribed period limits the jurisdiction of the latter in the discharge of its functions as a reviewing body. The statement in *Hunt* v. *Schilling*, 27 Ariz. 1, 229 Pac. 99, 100, that "The land department has the right to review the findings of the commissioner, and to set them aside," is still true, notwithstanding the twenty-day provision, but this does not mean that it is not necessary that the party desiring a review of such findings take them before the department within the prescribed time.

To anyone who gives the matter any thought at all, it is apparent that such a provision must exist if there is to be any stability at all to leases on state lands. If the department may entertain an appeal from the decision of the commissioner, taken after the twenty days have expired and a lease executed and delivered, the holder thereof can never ·feel assured that his contract will continue for the period for which it was entered into or that he can with safety place on the premises the improvements essential to its full enjoyment. It was undoubtedly the purpose of the framers of the Land Code that a lease once issued in accordance with its provisions should become an outstanding, valid contract which the lessee may hold and enjoy during its life or as long as he lives up to its terms.

The foregoing statement does not apply, of course, to a lease procured through fraud, deceit or misrepresentation, because any contract whose execution was obtained in this manner may be can-

celed any time. But, to set aside a lease on state land upon the ground of fraud it is necessary, under section 2971, Revised Code of 1928, that an action to cancel the lease be brought by the commissioner upon the order of the department, made after a public hearing of which the lessee or assignee has notice. The proceedings in this case, however, were not had pursuant to this provision and there is no serious claim that they were.

Appellants make the further suggestion that if there was no conflict between sections 2947 and 2966 as incorporated in chapter 71 and the time provision of the latter applies to appeals from the commissioner to the department, the amendment of section 2947 in 1929 (section 1, chapter 52, Session Laws of that year), in such a way as to make it the duty of the department to hold meetings monthly for the purpose of hearing grievances, had the effect of repealing section 2966 by implication, in so far as it requires notice of such appeals to be given within twenty days. The change this amendment made was simply to direct the department to meet monthly to hear grievances, instead of permitting it to do so semi-monthly as theretofore, and by no process of reasoning could this slight alteration in meaning have any greater tendency to repeal the time provision relating to appeals than the language amended had in its original form.

If any doubt existed as to the effect on section 2966 of the adoption at the same time of section 2947 or of its later amendment, it is removed by the application of the rule of construction that, where a special provision deals with the same subject as a general one, the former prevails. *In re Sullivan's Estate,* 38 Ariz. 387, 300 Pac. 193; *Bell* v. *Vaughn,* 46 Ariz. 515, 53 Pac. (2d) 61. Section 2947, as amended

as well as before, contains a general provision relating to the department's supervisory control over matters pertaining to state lands, and in section 2966 appears a special provision dealing with one phase of the same subject, namely, appeals to the department from the decision of the commissioner.

■ We are clearly of the view that the action of the trial court, in holding that the department had no jurisdiction to entertain an appeal brought to it after the expiration of twenty days from the rendition of the decision by the commissioner, was correct. The judgment is, therefore, affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.